STATE, Respondent, *v.* SILVER BOW REFINING CO., Appellant.

(No. 6,352.)

(Submitted October 3, 1928. Decided December 8, 1928.)

[272 Pac. 684.]

*Messrs. Wheeler & Baldwin,* for Appellant, submitted a brief; *Mr. Jas. H. Baldwin* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. C. N. Davidson,* Assistant Attorney General, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment rendered against the defendant on the pleadings. The complaint has been held sufficient. (*State* v. *Silver Bow Refining Co.,* 78 Mont. 1, 252 Pac. 301.) The question now is as to the sufficiency of the answer.

The defendant is a distributor of gasoline within the purview of section 2381, Revised Codes 1921.

Section 2382, as amended by Chapter 186 of the 1925 Session Laws (page 359), provides in part that every distributor shall pay to the state treasurer for each year a license tax for engaging in and carrying on his business in this state in an amount equal to two cents for each gallon of gasoline manufactured, produced or compounded by him and sold by him in this state, or shipped, transported or imported by him into, and distributed and sold by him within, this state, after it has arrived in and is brought to rest within this state, whether sold in the original packages or in broken packages, during such year, provided that all gasoline "distributed by any distributor to any of its service stations

in this state shall be deemed to have been sold, and shall be treated and considered, in computing such license tax in the same manner as though the same had been sold to dealers or other persons."

The term "dealer" means and includes every person, other than a distributor, who engages in the business in the state of distributing or selling gasoline within the state. (Sec. 2381, supra.)

Section 2383, as amended by Chapter 186, supra, provides that every dealer shall for each year pay to the state treasurer a license tax equal to two cents for each gallon of gasoline sold or distributed by him in this state during the year, provided that gasoline sold by him which was purchased from a producer who has paid the tax thereon shall not be included or considered in determining the amount of the license tax to be paid, but only such gasoline "as was shipped, transported or imported into this state and purchased by such dealer, before it had arrived in and was brought to rest within this state and then resold by such dealer, whether in the original packages or in broken packages."

Section 2386 provides in part that every distributor, within thirty days after the end of each quarter, must make out in duplicate on forms prescribed by the state board of equalization, and deliver to the state treasurer, a statement showing the total number of gallons of gasoline refined, manufactured or compounded and sold by him within this state, or the total number of gallons of gasoline shipped, transported or imported into this state by him during such quarter, with other information, "and the total amount due to the state of Montana as license taxes for such quarter," and the next section provides that he must, at the same time the statement is delivered to the state treasurer, pay to the state treasurer the amount of the license tax shown by the statement to be due.

Section 2389, as amended by Chapter 186, supra (page 360), provides that, if the distributor shall fail, neglect or

refuse to make the statement required by section 2386, the state board of equalization shall proceed to inform itself, as best it may, regarding the matters and things required to be set forth in such statement, and, from such information as it may be able to obtain, make a statement showing such matters and things, and determine and fix the amount of the license tax due the state from the delinquent distributor, adding to the amount of the license tax a penalty of five per cent for the first failure, neglect or refusal, and ten per cent for the second failure, and deliver such statement to the state treasurer, who shall proceed to collect the amount of the license tax with penalty added thereto, and interest on the whole thereof at the rate of twelve per cent per annum; and "upon request of the state treasurer it shall be the duty of the attorney general to commence and prosecute the [to] final determination in any court of competent jurisdiction, an action at law to collect the same." All license taxes are made a prior lien on all property used by the distributor in connection with the business or operation subject to the taxes, which liens may be enforced in the name of the state in the same manner as other liens are enforced by law. No action shall be maintained by any distributor to review, revise or change such statement in any particular, or to enjoin the collection of the license tax, or any part thereof, and such distributor shall have no right to pay the tax, or any part thereof, under protest and to maintain an action to recover the same.

It is alleged in the first cause of action of the complaint, in substance (and what is said respecting the first cause of action applies to the second), that the defendant manufactured, distributed and sold 132,894 gallons of gasoline in Montana during the quarter ending June 30, 1925, and for a period of more than thirty days thereafter failed, neglected and refused to make out and file with the state treasurer the required statement; that the state board of equalization, pursuant to the provisions of section 2389, supra, and imme-

diately after the expiration of the thirty-day period, from information obtained by it, found, determined and fixed the amount of the license tax due the state from the defendant for said quarter, and on October 5, 1925, added a penalty of five per cent thereto and delivered to the state treasurer a statement, as required by law; and that the amount due the state as a license tax from the defendant, upon the basis of two cents per gallon for 132,894 gallons is $2,657.88, and the penalty of five per cent is $132.89; that the defendant has at all times failed, neglected and refused to pay the same.

In its answer, the defendant admits that during the quarter mentioned it refined, manufactured, produced and sold gasoline in Montana, amounting to a total of 132,894 gallons, that it failed to file the statement required, and that it has failed to pay the state treasurer the aforesaid sums of money. Affirmative defenses are pleaded at great length.

Many of the points relied upon by the defendant for reversal were determined adversely to it when the case was here before. We see no reason to reconsider any of these, but shall take up those which we deem necessary to a disposition of the present appeal.

1. Because section 2389, supra, prohibits a defaulting distributor from maintaining the actions therein mentioned, it is argued that the defendant is deprived of property without due process of law, and sections 3, 6 and 27 of Article III of our state Constitution, and section 1 of the Fourteenth Amendment are relied upon.

If the law imposing an occupation tax on the defendant is valid, and presumably it is, when the defendant sold 132,894 gallons of gasoline in Montana during the quarter ending June 30, 1925, and for more than thirty days thereafter failed, neglected and refused to make out and file with the state treasurer a statement showing the fact, it became the duty of the state board of equalization to ascertain the fact, and, having ascertained it, to add a penalty of five per cent to the amount due, and to deliver a statement thereof to

the treasurer. The legislature had the power so to prescribe, and no serious argument is made to the contrary.

The mode of assessing taxes by the state is necessarily summary that it may be speedy and effectual. It is not essential to the validity of a tax that the party to be charged should have been present, or had an opportunity to be present, in some tribunal, when he was assessed. This is not, and never has been, considered necessary. (*McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335.)

Section 2386, supra, makes it the duty of the taxpayer to make out the statement, and it is only when he neglects to do so that the state board of equalization is required to make it. Having refused to make out and file the statement, the taxpayer will not be heard to complain of what the board has lawfully done.

There is nothing new in a rule which denies relief to a taxpayer who neglects or refuses to return to the taxing officers a statement which the law demands. (*McMillan* v. *Carter*, 6 Mont. 215, 9 Pac. 906; *Lambard* v. *County Commrs.*, 53 Me. 505; *Lincoln Transfer Co.* v. *County Board of Equalization*, 78 Neb. 197, 110 N. W. 724.) The object of the statute is to obtain from the one best qualified to furnish the information a correct statement for the benefit of the assessing officers, and consequently for the benefit of the public; and, if the taxpayer neglects or refuses to do his duty, he must bear the burden the law imposes. (*Travelers' Ins. Co.* v. *Board of Assessors*, 122 La. 129, 24 L. R. A. (n. s.) 388, 47 South. 439.) Moreover, it is a general principle that one will not be heard to complain of action which is not injurious to him; nor where the fault complained of is attributable to himself. He must show that he has suffered, or will suffer, injury. (Cooley on Taxation, 4th ed., sec. 1655.)

Here the defendant admits having sold within the quarter the exact quantity of gasoline for which the state seeks to hold it liable, admits that it neglected and refused to make

the required statement, and admits that it has not paid the tax.

But it is argued that section 2389 closes the doors of the courts to defendant. It is true that the statutes of Montana in some instances provide for the issuance of injunctions to restrain the sale of property for the nonpayment of taxes (sec. 2268, Rev. Codes 1921), and in other instances provide for the payment of taxes under protest, giving the taxpayer the right to bring action to recover the same (sec. 2269, Id., as amended by Chap. 142 of the Session Laws of 1925, page 255; and see secs. 2271, 2272, Rev. Codes 1921), and that these remedies are not available to the defendant in this case.

But, conceding that defendant, notwithstanding its default, has a right to contest the validity of the tax, it does not follow that it has not its day in court. In Cooley on Taxation, fourth edition, section 1614, we find the following: "If a tax is unlawful, the person taxed may resist the exaction instead of submitting to it and bringing suit afterwards. This is only a statement of a general principle of the common law which recognizes the individual liberty of every person to refuse to obey an unlawful demand." The principle stated by Judge Cooley is recognized in section 2389, wherein it is provided that, upon the request of the state treasurer, the attorney general shall prosecute an action at law to collect the tax. In that action the defendant may answer and as a matter of course may resist any unlawful demand made upon him. If he has failed, neglected or refused to make the required statement, undoubtedly he may not be permitted to review, revise or change the statement made by the board. But that he may attack the constitutionality of the law, or defend against a fraudulent assessment, there cannot be any doubt.

While it is not necessary for the state government in collecting taxes to summon the aid of the courts, it may do so. (37 Cyc. 1234.)

Section 2389 is not vulnerable to any of the attacks made upon it.

2. Defendant alleges that the Act on which the state bases its claim of right contravenes sections 1, 2 and 4 of Article XII of the Constitution of this state. We shall not stop to discuss this challenge at length. In the first place, clearly the tax in question is a license tax which, under section 1 of Article XII, the legislative assembly has the right to impose. Secondly, all those in the same occupation in this state are taxed alike; the tax is uniform upon the same class of subjects within the territorial limits of the authority levying the tax, as required by the Constitution, section 11, Article XII. This subject has been covered fully in the recent case of *Hale* v. *County Treasurer of Mineral County,* 82 Mont. 98, 265 Pac. 6.

The argument as to section 4, supra, was disposed of in *State* v. *Silver Bow Refining Co.,* supra.

3. The next objection is that the Act contravenes section 2 of Article IV of the Constitution of the United States, and section 1 of the Fourteenth Amendment, as well as section 11 of Article XV of the Constitution of Montana. The essence of the complaint on this score is that the defendant is not granted the equal protection of the laws, or, to state the lengthy argument briefly, it is said that the Act sought to be enforced does not act uniformly and with equal incidence upon each person engaged in the business of selling gasoline and distillate in this state; that the actual effect of the Act in operation is to put a tax upon industry in Montana and to place a burden upon the local refiner of gasoline, who sells his product in this state, which is not placed upon others engaged in the same business, and that the Act gives to foreign corporations, and allows them to exercise and enjoy, within this state, greater rights and privileges than those possessed and enjoyed by corporations of the same character created under the laws of this state.

By the Act in question, the state tax applies to all distributors and dealers who, being engaged in business in this state, make sales and delivery of gasoline in Montana.

Gasoline sold by a dealer which was purchased by him from a producer who has paid the tax thereon may not be considered in determining the tax to be paid by him, but when he sells imported gasoline after it arrives in and is brought to rest in this state, he is liable for the tax thereon. (Sec. 2382, supra.) If he desires to recoup the amount from his customer, the consumer—and he invariably does—the cost to the consumer is the same whether the dealer purchases the gasoline from the defendant or from without the state: for in one case the dealer has paid the two cents per gallon to the producer, and in the other he is liable to pay the two cents to the state. The effective design here is to prevent discrimination against the Montana producer.

Let it be noted that the license or occupation tax is imposed upon those distributors and dealers who *engage in the business described in this state.*

A tax on the sale of imported gasoline after it has come to rest in this state is permissible, regardless of the fact that it has been the subject of interstate commerce. (*Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643.)

But it is asserted that the Act permits a discrimination against the Montana producer in this fashion: that a Montana dealer may purchase gasoline before it comes to rest in Montana for sale and use it in this state and resell the same for use here before it comes to rest here, and after it comes to rest deliver the same to purchasers of gasoline in broken or unbroken packages tax free. The answer is that a Montana dealer cannot lawfully do anything of the sort; the assertion is based upon a misconception of the law. The sale is not complete until delivery, and, when the dealer receives the gasoline in this state for delivery, interstate transportation has ceased, and as a matter of law the commodity has come to rest in this state. Such a palpable attempt to evade the law must fail. (See *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366, 25 A. L. R. 1195, 67 L. Ed. 309, 43 Sup. Ct. Rep.

146.) The case would be no different if a Montana dealer were to purchase a trainload of gasoline at Casper, Wyoming, for shipment to Great Falls. Interstate transportation would end at Great Falls. But, if the shipper were to order a car detached for sale to a customer at Billings, that car, upon being detached from the train at Billings for sale there, would come to rest. Whenever the Montana dealer exercises complete dominion and control over the gasoline in Montana it may be said to have come to rest in this state. (*Champlain Realty Co.* v. *Brattleboro,* supra.)

The affirmative defense, in an effort to show a discriminatory operation of the law against the defendant, contains allegations concerning the use of gasoline by dealers in conducting their business and in pursuing their pleasures. But, as we understand these allegations, which are broadly general in character, what we said when this case was here before is a complete answer to the point now attempted to be made: any attempt to lay an excise tax upon products imported into this state for consumption only by the importer must fail as in contravention of the federal Constitution. (*State* v. *Silver Bow Refining Co.,* supra.)

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.