## Kentucky Independent Oil Company v. Coleman, Auditor of Public Accounts.

(Decided December 16, 1930.)

H. B. MACKOY, R. T. BURKE, W. A. BERRY and C. C. GRASS-HAM for appellant

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT and CLIFFORD E. SMITH, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Chapter 120, Acts 1924, imposing a state tax of three cents per gallon on all gasoline sold in this commonwealth "at wholesale," as thereinafter defined, became effective on June 18, 1924. Between that date and January 1, 1925, the Kentucky Independent Oil Company paid to the state gasoline taxes aggregating $36,581.64. This action was brought to require the auditor to issue to the company his warrant for that amount. The ground relied on in the original petition was this: The gasoline tax was a tax on the privilege of doing business in this state, and inasmuch as the company by complying with section 4189a, Kentucky Statutes, had already paid for that privilege, it could not be taxed again for the same thing. The auditor filed an answer in three paragraphs containing certain averments not necessary to be set out. The demurrer interposed to the petition was not passed on, but the demurrer to each paragraph of the answer was sustained, and the auditor having declined to plead further, the court awarded a mandamus directing the auditor to issue his warrant for the sum demanded. On appeal we upheld the validity of the tax on the ground that it was an excise tax and not a tax on the privilege of doing business in this state, and therefore did not amount to double taxation, and remanded the cause with directions to sustain the demurrer to the petition. Shanks v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S. W. (2d) 383.

On the return of the case the action was revived in the name of Clell Coleman, who had succeeded William H. Shanks as auditor, and the demurrer was sustained to the petition as directed.

Thereafter the company filed an amended petition challenging the validity of the tax not only on other grounds not necessary to be considered, but on the further ground that, as construed by this court, it was a burden on interstate commerce, and therefore violative of the commerce clause of the Federal Constitution. With

respect to this phase of the case the allegations of the amended petition are these:

"Plaintiff further says that it was and has been at all times mentioned herein and in said original petition, engaged in the business of selling and distributing gasoline at wholesale and that it sold said gasoline for use in both intrastate and interstate commerce; that a very large portion of said gasoline, the amount of which plaintiff is unable to state and has and can have no knowledge of or means of stating, was and is sold and distributed to persons to be used and consumed and was and is used and consumed in interstate commerce; that it was and is not possible for plaintiff to ascertain or determine or report to the state of Kentucky, which of the persons to whom said gasoline was sold or distributed by it were intending or going to or would use or consume said gasoline in interstate commerce or in intrastate commerce, or what portion or portions of the gasoline so sold and distributed by it would be or was or is used or consumed in interstate commerce, or in intrastate commerce.

"Plaintiff says that, by reason of the foregoing facts and premises, the said Act hereinbefore mentioned and referred to, by its terms and as so construed, interpreted and enforced by said Court of Appeals, and by its operation and effect, and the tax imposed and collected thereby and thereunder, were and are invalid, illegal and unconstitutional and in violation of paragraph 3, section 8, article 1, of the Constitution of the United States in that they were and are a burden, restraint upon and regulation of interstate commerce for that said Act and said tax have not been and can not be separated or divided as between interstate and intrastate consumption and use, but have been made and held to apply to interstate as well as intrastate consumption and use of said gasoline, and it was and is not possible or feasible to regulate or control the operation and effect of said Act, as so construed, interpreted and enforced, or the tax imposed and collected thereunder so as to prevent it from being imposed upon gasoline consumed or used in interstate commerce while allowing the State of Ken-

tucky to enforce said Act and said tax with respect to the intrastate consumption or use of gasoline."

Without waiving his demurrer and motion to strike theretofore filed, the auditor filed an answer denying the allegations of the amended petition, and pleaded in substance that on each sale the tax was added to the sale price and was paid by the purchaser. After the demurrer to the amended petition was withdrawn, evidence was heard, and the law and facts having been submitted to the court without the intervention of a jury, it was adjudged that the company was not entitled to the relief prayed. Pursuant to a motion for that purpose, the court made separate findings of law and fact. In addition to other findings of fact, the court found that on each sale the tax was included in the sale price of the gasoline paid by the purchaser and collected by the company as the agent of the state; that the greater portion of the business was not interstate in character; that the only interstate feature of the business was where the company's trucks owned in Kentucky with taxable situs in Kentucky were used to replenish its filling stations which it maintained in Hamilton county, Ohio, that the quantity of gasoline so used in its trucks was not shown, that the information was or should have been in the possession of the company, that the use of the trucks in making such deliveries was a mere incident to the general business of the company, and further that the company collected and paid the taxes voluntarily and not under threat, coercion or duress. The court concluded as a matter of law that: (1) "The company was not the real party in interest, could not raise the constitutional question, and could not maintain the action for the recovery of the taxes which it collected as agent of the state and paid into the state treasury; (2) the tax imposed by the statute was an excise tax; and (3) the act imposing the tax did not contravene the commerce clause of the Constitution of the United States. The appeal challenges the correctness of both the findings of fact and conclusions of law.

It is first insisted that the company's business was interstate in character because of sales of gasoline for use and consumption in interstate journeys. The record discloses that, though the company maintains some stations in Cincinnati, Ohio, its principal place of business is in Covington, Ky. It also does considerable business in Newport, Ky. Nearby are two bridges leading to

Cincinnati. Its tanks are located in Kentucky. From these tanks the gasoline is drawn, sold, and delivered not only for use and consumption in Kentucky, but also to motorists, truck owners, taxicab companies, wholesale groceries, and others, for use and consumption in going to and from their places of business in Cincinnati, Ohio. It is difficult to perceive upon what theory it can be said that the last-mentioned transactions involve any element of interstate commerce, so far as the company was concerned. The gasoline was not sold in the tank cars or the original packages in which it was brought into the state. It was at rest in the company's storage tanks or at its service stations, and was a part of the common property of the state. When a purchaser asked for gasoline, all that the company did, or agreed to do, in consideration of the price, was to transfer the gasoline from its tank to the tank of the purchaser. All this was begun, carried on, and completed in Kentucky. This was the end of the transaction, and what happened thereafter was a matter of indifference to the company. Clearly the mere intention of the purchaser, whether disclosed or undisclosed to the company, to use and consume the gasoline in an interstate journey, though coupled with the fact that it was used and consumed for that purpose, did not have the effect, so far as the company was concerned, of converting the transaction into one of interstate commerce. Superior Oil Co. v. Mississippi ex rel. Knox, 280 U. S. 390, 50 S. Ct. 169, 74 L. Ed. 504; Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139.

We come now to the consideration of the contention that the use of a portion of the gasoline by the company's trucks when making deliveries to its stations in Cincinnati, Ohio, was interstate commerce, and that the entire tax is invalid because it was impracticable to separate the gas so consumed from that sold and delivered to others. The record discloses that the company turned into the state treasury taxes on 1,219,388 gallons of gasoline, and that one of the witnesses who estimated the amount of gasoline consumed in making interstate deliveries at from 2,000 to 2,500 gallons per month, or a total of about 15,000 gallons, testified that it was not possible to separate the gas so consumed from that sold and delivered to others. This may have been true at the time the evidence was given, as no separate account of that consumed had been kept. But the question is to be determined, not as of that time, but in the light of what

reasonably could have been done at the time the gasoline was placed in the trucks. Notwithstanding the evidence on the subject, there is no rule of law that forbids the employment of common sense and common knowledge in the decision of a question like that presented. Applying this test, we are constrained to hold that the task of keeping a separate account of the gas consumed by the company in interstate deliveries was not only practicaable, but so easy and simple that it could have been performed by anyone of average intelligence. Were we to hold that a recovery could be had in a case like this, it would put it in the power of every wholesale dealer in gasoline to defeat the tax on all sales, however large, upon a mere showing that an insignificant portion of the gasoline on which the tax had been paid was consumed in interstate deliveries, accompanied by unconvincing testimony that it was not practicable to separate the gas so consumed from that sold to others. In our opinion the facts do not bring the case within the rule announced in Philadelphia & Reading R. R. Co. v. Pennsylvania, 15 Wall. 232, 21 L. Ed. 146; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219; and other cases of like import, and the contrary contention of counsel for the company cannot be sustained.

The only other question for decision is whether a recovery may be had for the taxes paid on gasoline consumed by the company's trucks in making the interstate deliveries. Though it may be conceded that Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683, is controlling, and that the tax to that extent was a burden on interstate commerce and could not have been collected, there are other facts that forbid a recovery. The amended petition proceeded solely on the theory that the gasoline was sold and distributed to persons to be consumed, and was used and consumed in interstate commerce. It contains no allegation that any of the gasoline on which the taxes were paid was used or consumed by the company in interstate commerce, and no recovery was sought on that ground. No separate account of the gas consumed in interstate commerce was kept, as should have been done. There was no separate demand for the repayment of the tax thereon, and prior to the bringing

of the suit the auditor was given no opportunity to refund. Moreover, the evidence of the quantity of gasoline so consumed was vague and nebulous. It consisted of an estimate of from 2,000 to 2,500 gallons a month made by a witness, who admitted that he would have to guess as to the amount. It is at once apparent that neither the pleading nor the evidence was sufficient to authorize a judgment in any amount.

Our conclusion on the whole case makes it unnecessary to pass on the other questions decided by the lower court and discussed in briefs of counsel.

Judgment affirmed.

Whole court sitting.