(138 So. 503)

STATE v. JOHNSON.

No. 31158.

Nov. 3, 1931.

Rehearing Denied Nov. 30, 1931.

Peyton R. Sandoz, of New Orleans (Robert, J. O'Neal, of Shreveport, of counsel), for the State and E. A. Conway, Supervisor of Public Accounts.

Dickson & Denny, of Shreveport, for W. H. Johnson, receiver of Caddo Transfer & Warehouse Co.

ODOM, J.

The state of Louisiana brought this action against defendant to recover the total sum of $2,819.26, as tax on five shipments of gasoline brought into this state from the state of Arkansas, alleged to have been sold, distributed, or consumed in this state by defendant and its subsidiary corporations; said tax being levied by Act 6, Extra Session of 1928, as amended by Act 8 of 1930.

The act of the Legislature referred to provides, section 1:

"That there is hereby levied a tax of four cents (4¢) per gallon on all gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption, to be collected as hereinafter set forth."

It is provided in section 2 of the act that the said tax "shall be collected from all persons, firms, corporations or associations of persons, engaged as dealers in the handling, sale or distribution of such products within the state of Louisiana." The same section defines the term "dealer" to mean "the person, firm, corporation or association of persons who imports such gasoline or motor fuel from any other state or foreign country for *distribution*, sale or use in the state of Louisiana." (Italics ours.)

It will be noticed that the word "distribution" is not used in the title of the act nor in section 1, which imposes the tax.

The act provides that the collection of this tax shall be under the supervision of the su-

pervisor of public accounts and that he shall "forward the full amount collected by him during the preceding calendar month to the State Treasurer, to be placed to the credit of the General Highway Fund, created by Section 22 of Article VI of the Constitution," and, "All such taxes, when so placed to the credit of the General Highway Fund, shall be allotted and disbursed by the said Louisiana Highway Commission for the purpose of the construction and maintenance of the system of State highways and bridges, and for such other purposes as provided for in paragraph (a), Section 22 of Article VI, of the said Constitution of Louisiana." Section 5.

The defense is that defendant is not a dealer in or a distributor of gasoline in the sense those terms are used in the act, but that it purchased said gasoline in the state of Arkansas and had it shipped into the state of Louisiana to be consumed by it and its subsidiary corporations in the states of Arkansas, Texas, and Mississippi, and some parts in Louisiana, and that only a portion of said gasoline was used in the state of Louisiana, and that said gasoline was not sold in this state, but only used by defendant and its subsidiary corporations, the greater portion in interstate business.

The defendant, Johnson, is receiver for a Louisiana corporation which operates motorbuses and motortrucks for the transportation of passengers and freight both interstate and intrastate and uses gasoline as fuel for the operation of said vehicles.

The gasoline on which the tax is sought to be collected was purchased in tank car lots in the state of Arkansas, shipped to Shreveport in this state, where the corporation has its domicile and headquarters, and there deposited in storage tanks, from which it was pumped into the tanks of the vehicles. The

gasoline was not brought into the state for sale or distribution to the public but only for use by defendant in its business.

The state is not here seeking to collect a tax on the shipment of the gasoline from Arkansas into Louisiana. Its contention is that the defendant was a *dealer* in gasoline as defined by the act, in that when this gasoline came to rest in the storage tanks of defendant in Louisiana, it became a commodity of this state and that the pumping of the gasoline by defendant from its storage tanks into the tanks of its vehicles was a *distribution* of the commodity which constituted defendant a dealer under the act.

It is further contended by the state that since the gasoline was *distributed in this state* by the defendant, which distribution, it is contended, made the defendant a dealer, the tax was due on the *total amount distributed*, regardless of the purpose for which it was finally used, whether used as an agency or instrumentality in interstate or intrastate commerce and whether finally consumed within or without the state.

The defendant contends on the contrary, first, that it is not a dealer in gasoline, and, second, that if it be held to be such under the act it owes no tax on the gasoline destined for use in interstate commerce; that gasoline so used is an instrumentality of interstate commerce and cannot be taxed by the state for so to do would be to lay a burden upon such commerce, which is prohibited by the commerce clause of the Federal Constitution, and that in so far as this state has attempted to do so by Act 6 of the Extra Session of 1928, said act is unconstitutional.

It was held by the trial judge that the defendant must pay the tax on all gasoline used by it "on intra-state trips," and, "Further ordered, adjudged and decreed that the de-

mands of the State of Louisiana against defendant for the tax on gasoline used *on interstate trips* by said companies are hereby rejected." (Italics ours.)

█ 1. In so far as the judgment condemns defendant to pay this tax on gasoline "used on intra-state trips" it is correct, but in so far as it rejected the state's demand for the collection of the tax on gasoline used "on interstate trips" it is correct only in part.

The state of Louisiana has, by legislative enactments, taken over and now owns the principal public highways of the state. It has within the last few years launched and is now engaged in a paving scheme of vast proportions. It has already spent millions of dollars in paving its roads and building bridges and millions are yet to be spent, many of the major projects having been completed at the time this suit was brought. In order to raise funds for this purpose, it levied a tax on gasoline or motor fuel. It is provided that upon the collection of this tax, it shall be paid over to the state treasurer, who shall at once place the same to the credit of the "General Highway Fund" to be disbursed by the Louisiana highway commission "for the purpose of constructing and maintaining the system of state highways and bridges." The entire amount realized from the collection of this tax is allocated to the general highway fund and can be used for no purpose other than the building and maintaining of roads and bridges.

The defendant is receiver for a Louisiana corporation engaged in the transportation of passengers and freight in motor buses and trucks, partly in interstate commerce between this state and the states of Arkansas, Texas, and Mississippi.

Its buses and trucks used in such interstate commerce are operated on the highways built, maintained, and owned by this state.

It now seeks to evade the payment of the tax on so much of the gasoline as it uses in interstate commerce on the theory that such gasoline is an instrumentality used for carrying on this commerce and that the tax is "a tax or burden" on such commerce and is prohibited by the Federal Constitution.

In support of his contentions, defendant cites, among others, the case of Helson et al. v. Commonwealth of Kentucky, 279 U. S. 245, 49 S. Ct. 279, 280, 73 L. Ed. 683.

In that case Helson, a resident of Illinois, was engaged in operating a ferryboat on the Ohio river between Kentucky and Illinois, doing an exclusively interstate business. He used gasoline to create motive power for the boat, all of which was purchased in Illinois. Seventy-five per cent. of this gasoline was consumed within the limits of Kentucky and the latter state sought to collect a tax on the gasoline used within its borders, under a special statute, the validity of which was assailed on the ground that it was "in contravention of the commerce clause and other provisions of the federal Constitution."

The court upheld the contention of the plaintiff, Helson, and ruled that the state of Kentucky could not collect a tax on gasoline thus used. Many cases were cited holding that a state "can not lay a tax on interstate commerce in any form," and it was specifically held that:

"The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce."

It was said that the gasoline tax could not be reasonably distinguished from a tax for using locomotives or cars employed for such purpose, and the court said:

"A tax laid upon the use of the ferryboat would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce."

If this were the only case to be found touching the point at issue in the case at bar, that is, whether a state may levy a tax on gasoline used as an instrumentality of interstate commerce, it might reasonably be said that the issue is foreclosed. But there is a feature involved in the case at bar which was not involved in the Helson Case, in this, that in the case at bar, the defendant used highways owned, built, and maintained by the state in carrying on its interstate traffic, whereas Helson plied his ferryboat on the Ohio river, a highway which the state of Kentucky neither owned nor controlled and which of course it did not maintain.

The Helson Case was decided on April 8, 1928. It has been held repeatedly by the same court, in some cases decided before and some since that date, that whereas a state may not lay a tax or burden upon interstate commerce, yet it may impose upon vehicles engaged in such commerce "a charge as compensation for the use of public highways, which is a fair contribution to the cost of maintaining them and of regulating traffic thereon."

The case of Postal Telegraph-Cable Co. v. City of Richmond, 249 U. S. 252, 39 S. Ct. 265, 63 L. Ed. 590, is in point.

In that case the telegraph company sought to enjoin the city from collecting a license tax of $300 levied against it "for the privilege of doing business within the city of Richmond, but not including business done to or from points without the state," and also from attempting to collect "an annual fee of $2, imposed by another ordinance, for each tele-

graph pole which the company maintained or used in the streets of the city."

The contention was made by the company that "since both taxes must be paid, if at all, from receipts from interstate commerce they constitute such a burden upon that commerce of the company as to render them [the ordinances] unconstitutional."

With reference to the license fee of $300 the court said that if as a matter of fact such fee had to be paid from the earnings on interstate business, it might well be said that the ordinance imposing it would be invalid. As to the ordinance levying a tax of $2 on the poles, that this character of tax may be sustained "where not clearly shown to be a direct burden upon interstate commerce or unreasonable in amount, *having regard to the purpose for which it may lawfully be imposed.*" (Italics ours.)

The latter ordinance was upheld upon the ground that "since such use [that is, use by the telegraph company of the streets] imposes contingent liabilities upon a city, it is competent for it, in the exercise of its police power, to exact reasonable compensation 'in the nature of rental' for the use of its streets, having regard to the duties and responsibilities which such use imposes on the municipality. Even if the net returns from the intrastate business should not equal such tax, * * * this alone would not be conclusive against its validity. *If the method of doing interstate business necessarily imposes * * * liabilities upon a municipality, it may not be charged with the cost of these without just compensation. Even interstate business must pay its way—in this case for its right of way and the expense to others incident to the use of it.*" (Italics ours.)

The case of Clark et al. v. Poor et al., 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, involved the validity of the Ohio Transportation Act (Gen. Code Ohio § 614-84 et seq.), which provides that motor transportation companies must pay "a tax graduated according to the number and capacity of the vehicles used."

The plaintiffs operated as common carriers a motortruck line between a city in Indiana and one in Ohio and carried on interstate commerce exclusively. They refused to pay the tax on the ground that as to them "the Act violates the commerce clause of the Federal Constitution," and that the state "is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under section 614-94, *for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same.*"

The court held that users of highways which are public property, although engaged in interstate commerce, are subject to regulation by the state to insure safety and convenience and the conservation of them. As to the tax the court said:

"Users of them [the roads], although engaged exclusively in interstate commerce, * * * may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use."

The state of Connecticut, by statute, imposes a tax of one cent for each mile of highway traversed by any motor vehicle used in interstate commerce "as an excise on the use of such highways."

In the case of Interstate Busses Corporation v. Blodgett, Tax Collector, 276 U. S. 245, 48 S. Ct. 230, 231, 72 L. Ed. 551, the validity of this tax was attacked on the ground that it imposed an unreasonable burden upon interstate commerce. The court upheld the validity of the law, saying:

"That the appellant is already contributing to highway maintenance is not in itself significant, for the state *does not exceed its constitutional power by imposing more than one form of tax as a charge for the use of its highways in interstate commerce.*" (Italics ours.)

The latest decision by the United States Supreme Court involving the point here at issue to which our attention has been called is that of Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 381, 75 L. Ed. 953, decided April 13, 1931. The court was there called upon to pass upon the validity of a Tennessee statute which "imposes upon concerns operating interstate motor buses on the highways of the state a privilege tax graduated according to carrying capacity." The act was declared unconstitutional. But the court said:

"A detailed examination of the statute under which the tax here challenged was laid makes it clear that the charge was imposed, *not as compensation for the use of the highways, but for the privilege of doing the interstate bus business.*" (Italics ours.)

The act provides that the proceeds of the tax "shall go and belong exclusively to the general funds of the state."

On the point at issue in the case at bar the court said in the course of its opinion:

"While a state may not lay a tax on the privilege of engaging in interstate commerce, Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon."

■ 2. The gasoline tax levied under the statutes of this state is solely for the purposes of building and maintaining highways and bridges which belong to the state. Every dollar of it is allocated to the highway fund. The defendant company, while engaged in interstate traffic, makes the public highways of the state their "place of business." It is a fact conceded by all that motorbuses for carrying passengers and motortrucks for hauling freight, due to their great weight and the high speed at which they travel, do more damage to the public roads than perhaps all other traffic combined. Their use of the highways throws a heavy burden upon the state in the way of maintenance and upkeep. The state cannot be called upon to carry this burden of expense without recompense. Upon the theory that interstate business must "pay its way," those who are engaged therein must pay their just and reasonable proportion of the expense of building and maintaining the roads which they use.

There is no contention or even suggestion made in this case that the tax which defendant is called upon to pay is discriminatory or out of proportion to the benefit derived from the use of the roads, or that the amount of the tax is disproportionate to the cost of building and maintaining them.

This defendant must therefore pay the tax on all the gasoline used within the state, even though used in connection with its interstate business.

■ 3. The demands of the state to collect the tax on gasoline used in connection with defendant's interstate business, consumed outside the state of Louisiana, must be rejected for two reasons.

The first is, and that is sufficient, the state has not attempted to levy a tax on any gasoline except that which is "sold, used or consumed in the state."

This is an excise, not a property, tax. The tax is laid, not upon the gasoline, but upon the

right or privilege of selling, using, or consuming it; the amount to be paid being based upon the quantity involved. Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341; Fleischmann Co. v. Conway, 168 La. 547, 122 So. 845.

The title of the Act 6 of Extra Session of 1928, page 14, reads in part:

"To provide revenues for the public highways of the State of Louisiana by levying a tax of four cents per gallon on all gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption."

Section 1 of the act, so far as it refers to the levying of the tax, reads as follows:

"That there is hereby levied a tax of four cents (4¢) per gallon on all gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption."

Conceding that defendant is a "dealer" in gasoline as defined by the act, in that it distributes the gasoline in this state, it does not follow that it must pay the tax on all the gasoline "distributed," by virtue of the provision in section 2 of the act to the effect that the tax shall be paid by all who import gasoline into this state for "distribution." The word "distribution" appears first in section 2 of the act, which defines the term "dealer." It does not appear in either the title, which indicates its purpose, or in section 1, which levies the tax. It is therefore clear that the state has not levied the tax on any gasoline except such as is "sold, used or consumed in the state of Louisiana."

In the second place, the state could levy no tax on gasoline used in interstate commerce except upon the theory that the tax so levied was to be used and was used to build and maintain its highways and bridges, which are made use of by those engaged in interstate traffic. Therefore the state is not entitled to

a tax on gasoline used and consumed while traversing roads outside of this state.

The agreed statement of facts found in the record shows that defendant used 55,493 gallons of gasoline in operating its buses in interstate traffic, and that of this amount approximately 10 per cent., or 5,549 gallons, was used within the state of Louisiana. That 6,219 were used in operating trucks hauling interstate freight; of this amount about 22 per cent., or 1,368 gallons, was used within this state, and the balance outside.

It is therefore ordered and decreed that the judgment appealed from be amended so as to provide that the defendant shall pay the tax on all gasoline used and consumed within the state of Louisiana, including that used and consumed "on interstate trips," and as thus amended it is affirmed, with all costs.