## Commonwealth, by Nelson, Revenue Agent, v. Dixie Greyhound Lines, Inc.

(Decided June 19, 1934.)

112

H. WARREN MIDDLETON and GEORGIA MAE NELSON for appellant.

WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The case presents the question of liability of the appellee for the 5-cent gasoline tax under the conditions stated. In this suit of the commonwealth by its revenue agent against the appellee to collect such tax and penalties, the court adjudged upon the pleadings that there is no liability. We are of opinion that the defenses interposed cannot be sustained and the judgment is erroneous.

The material facts are substantially agreed upon. The appellee is a foreign corporation engaged in operating busses carrying passengers for hire. It has a station at Paducah, Ky., in and out of which its busses arrive and depart from and to destinations in Illinois and Tennessee over the highways of Kentucky and of those states. The greater number of its passengers are carried from points in one state to those in another. A comparatively small part of the traffic is between places wholly within Kentucky. The defendant alleged that it was not possible to determine what percentage of its traffic during the past period covered by the petition was intrastate. The company purchased 18,077 gallons of gasoline outside of this state which was delivered to its station at Paducah, where it was stored and distributed to its motors as needed. The case seeks to impose the tax upon this gasoline. At the time the answer was filed, part of it had been consumed in the operation of the busses entering and departing from that station, as

above stated. The defendant alleged that it was not in position to ascertain what quantity was used in the operation of its cars in Kentucky and what quantity was used in other states, but charged that all of it was used in interstate traffic and that not more than 15 per cent. was actually used within Kentucky. None of the gasoline had been sold or distributed to another.

The law under which the tax is sought to be imposed is chapter 127 of the Acts of 1928, incorporated in the Kentucky Statutes as section 4224b-1 et seq., 1930 Edition. That act was repealed and re-enacted with some changes at the 1932 session of the General Assembly (chapter 150, Acts 1932), but the re-enactment had not become effective in time to affect the subject-matter, nor do the changes made in the statute affect the question to be determined.

Section 1 of the act (4224b-1, Statutes) defines gasoline for the purposes of the act and continues:

"A state tax of five cents (5c) per gallon is hereby imposed on all gasoline, as defined herein, sold in this Commonwealth at wholesale, as the words 'at wholesale' are hereinafter defined. * * * The word 'at wholesale' as used in this act, shall be held and construed to mean and include any and all sales made for the purpose of re-sale or distribution, or for use, and, as well, the gasoline furnished or supplied for distribution within this State, whether the distributor be the same person who so furnished the same, his agent or employee, or another person; *and also to mean and include any person who shall purchase or obtain gasoline without the state and sell or distribute or use the same within the state.*"

The portions of the act particularly applicable to the case are italicized.

This is not a license or privilege tax. It is levied on the commodity itself and is an excise tax on distribution, consumption, or use and not on the act of selling. It is necessarily contemplated that the ultimate consumer shall pay the tax. The seller or distributer is made an agency of collection. State Tax Commission v. Hughes Drug Company, 219 Ky. 433, 293 S. W. 944; Shanks v. Kentucky Independent Oil Company, 225 Ky. 303, 8 S. W. (2d) 383; Kentucky Independent Oil Com-

pany v. Coleman, 236 Ky. 592, 33 S. W. (2d) 615; Willis' Thornton on Oil & Gas, sec. 857.

The appellee contends that imposition of the tax upon this gasoline would be a direct burden upon interstate commerce, and hence offensive to the commerce clause of the Federal Constitution, which commits the regulation of transportation between states exclusively to Congress. If it has that effect, it is to be quite readily agreed that it is beyond the power of the state to impose the tax. The two factors to be regarded in determining the usually perplexing question of applicability of that principle in cases of this character are, obviously, the nature of the tax and the particular facts.

The appellee relies principally upon Helson v. Commonwealth of Kentucky, 279 U. S. 245, 49 S. Ct. 279, 281, 73 L. Ed. 683, in which this identical statute (changed only in respect of matters not material here) was construed in relation to a different state of fact and which reversed our decision in Metropolis Ferry Company v. Commonwealth, 225 Ky. 45, 7 S. W. (2d) 506. The Supreme Court held under the circumstances that the tax was a burden upon the use of means of interstate transportation. The defendants in that action were nonresidents of Kentucky operating a ferryboat across the Ohio river between Metropolis, Ill., and a point near Paducah, Ky. The situs of their office and all of their personal property was in Illinois. The gasoline used in generating motive power for propelling the ferry was purchased and delivered to the defendants in Illinois. Because the river below the north low-water mark is in Kentucky, 75 per cent. of the gasoline was actually consumed within the limits of Kentucky, but all of it was in the making of interstate journeys. It was sought to impose the tax upon the use of gasoline thus consumed. It is to be observed that Mr. Justice McReynolds dissented from that opinion, and that three other members of that court acquiesced in the result only because of the earlier decisions, but, as stated in the concurring opinion by Mr. Justice Stone, they could find no justification for the interpretation given the commerce clause which would relieve those engaged in interstate commerce from their fair share of the expenses of government of the states in which they operate by exempting them from the payment of a tax of general application.

The appellant would distinguish the two cases upon the ground that as the tax is levied for the sole purpose of raising revenue for constructing and maintaining the highways of the state, its imposition upon the gasoline is but to require the appellee to compensate the state for the use of its roads, while the ferryboat made no such use, and point out that the Supreme Court in that case declared that, ":The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce." We doubt the intention of the court to make the distinction as made by counsel, for it must have had in mind the more practical conception that the gasoline itself was the instrumentality which was actually being used. The Louisiana court, in State v. Johnson, 173 La. 669, 138 So. 503, placed the applicability of a gasoline tax consumed by interstate motorbusses upon that ground. Perhaps there are other cases. Undoubtedly the state may impose on motor vehicles engaged exclusively in interstate commerce a reasonable charge as a fair contribution to the cost of the highways. Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout v. City of South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Interstate Transit, Inc., v. Lindsey, County Court Clerk, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953; Carley & Hamilton v. Snook, 281 U. S. 66, 50 S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194. But this levy is a tax and not a toll, or a charge for use of the highways, and its payment is not dependent upon the enjoyment by the taxpayer of any special benefit from the use of the funds. Geo. E. Breece Lumber Co. v. Mirabal, 34 N. M. 643, 287 P. 699, 84 A. L. R. 827, affirmed 283 U. S. 788, 51 S. Ct. 352, 75 L. Ed. 1415; Nashville, C. & St. L. R. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 349, 77 L. Ed. 730, 87 A. L. R. 1191. The case must be decided upon some other hypothesis.

Material differences in the facts of the Helson Case and the instant one are the delivery into the state of the gasoline in bulk and its storage and distribution wholly within the state for use in both domestic and interstate transportation. In the ferryboat case the commodity was in this state only while in the engines actually engaged in moving the vehicle wholly in interstate commerce. The excise tax is, according to the terms of the statute, levied on all gasoline supplied for distribution and actually distributed in the state, as well as upon that used and

sold within its limits. Under the particular aim of the statute to tax the commodity irrespective of the character of its use, the case may be decided.

In Kentucky Independent Oil Company v. Coleman, supra, one of the asserted avenues of attempted escape from the tax was that the company's business was interstate in character because the gasoline it sold was for use and consumption in interstate journeys. Noting that the commodity had come to rest in storage tanks or at service stations, it was regarded as having become part of the common property of the state, and when sold to motorists and put into their machines the transaction was complete so far as the company was concerned. We denied the claim of immunity because an insignificant unallocated portion of the gasoline had actually been used by the company in its trucks in interstate travel.

In respect of the importation feature of the gasoline, where gasoline had been shipped in from another state in bulk by a distributer and dealer and the original packages had been broken and liability for an excise tax upon the sale and use of that gasoline was denied, the court wrote in Bowman, Attorney General of New Mexico, v. Continental Oil Company, 256 U. S. 642, 41 S. Ct. 606, 608, 65 L. Ed. 1139:

> "With the excise tax as imposed upon the use of gasoline by plaintiff at its distributing stations, in the operation of its automobile tank wagons and otherwise, we have no difficulty. Manifestly gasoline thus used has passed beyond interstate commerce, and the tax can be imposed upon its use, as well as upon the sale of the same commodity in domestic trade, without infringing plaintiff's commercial rights under the federal Constitution."

And in Texas Company v. Brown, 258 U. S. 466, 42 S. Ct. 375, 66 L. Ed. 721, where the validity of the Georgia tax on gasoline consumption was sustained, the court suggested the intention was to tax large consumers who might bring gasoline into the state and store therein for their use as needed and thereby escape the tax.

All of this gasoline lost its interstate character when it came to rest in Kentucky, and, though much of it was withdrawn for use in interstate transportation, it ac-

quired a local situs and became subject to the state's taxing power, for the commerce clause of the Federal Constitution (Const. U. S. art. 1, sec. 8, cl. 3) does not give immunity from undiscriminative local taxation of movable property unless it is in actual, continuous transit in interstate commerce. Champlain Realty Company v. Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195. There was no continuity of transit in the case at bar. Going beyond and modifying one branch of Bowman v. Continental Oil Company, supra, and other earlier cases relating to shipments and delivery of gasoline in original packages, it was held in Sonneborn Brothers v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095, that all gasoline which has reached its destination in a state and come to rest for purposes of sale might be taxed and that such tax is not a burden upon interstate commerce as the interstate transportation was at an end. See, also, General Oil Company v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Gregg Dyeing Company v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 832; N., C. & St. L. Ry. Company v. Wallace, supra.

Every state in the Union has a tax of this kind. The power to impose a reasonable and nondiscriminatory tax on the storage, sale, or use of gasoline is uniformly recognized as a valid exercise of the taxing power unless the statute contravenes some peculiar provision of a state Constitution or violates the interstate commerce clause of the Federal Constitution. Annotations, 47 A. L. R. 985; 84 A. L. R. 839. Aside from the matter of sale and use, the imposition of the tax on gasoline purchased out of the state and stored therein to be withdrawn and used by the same person is also valid. Foster & Creighton Company v. Graham, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971; Quick Service Tire Company v. Smith, 156 Tenn. 96, 299 S. W. 807. In Gregg Dyeing Company v. Query, supra, the provision of the South Carolina statutes, giving rise to federal questions, was that which levied a gallonage tax upon gasoline imported into the state and kept in storage for a period of twenty-four hours or more after it had lost its interstate character as a shipment and intended to be stored or used within the state. The act was complementary to

other statutes under which taxes were assessed on gasoline, as where it was sold within the state, and it was declared by the courts to be the purpose to prevent the evasion of that tax by large users of gasoline bringing in their supply from without the state, storing it for their own purposes. The appellant had imported a quantity of gasoline from another state and held it in storage for use in its manufacturing plant. The Supreme Court, affirming the decision of the state court, ruled that the tax was not a burden upon interstate commerce, and there was no constitutional discrimination when the act was read with other statutes and there was a practical operation of the taxing statutes in pari materia.

The question becomes narrowed to whether storage and withdrawal for consumption in an instrumentality of interstate commerce gives freedom from the tax. We have ample authority for holding that the commodity is not immunized on that account.

The Tennessee statute (Pub. Acts 1925, c. 67), in its material aspects much like ours, imposed, inter alia, an excise or privilege gasoline tax on "persons * * * and corporations engaged in or carrying on the business * * * of selling or storing or distributing gasoline," within the state and was made applicable to "persons, firms, or corporations, dealers or distributors, storing any of the products mentioned in this Act, and distributing the same, or allowing the same to be withdrawn from storage, whether such withdrawal be for sale or other use " In N., C. & St. L. Ry. v. Wallace, supra, the facts were in all respects similar to those at bar. The railway company, an interstate carrier, purchased large quantities of gasoline outside the state of Tennessee, brought it into the state, and unloaded it into its own storage tanks. All was withdrawn by that company and used as a source of motive power in interstate railway operations in Tennessee, Alabama, Georgia, and Kentucky. The defense now made before us, that the tax imposed upon the gasoline used in the business of an interstate carrier was a burden upon that commerce, was thus disposed of by the Supreme Court:

> "The gasoline, upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce, and lost its immunity as such from state taxation. General Oil Co. v. Crain, 209 U. S.

211, 28 S. Ct. 475, 52 L. Ed 754; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Susquehanna Coal Co. v. South Amboy, 228 U. S. 665, 669, 33 S. Ct. 712, 57 L. Ed. 1015; Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232. The fact that the oil was, in the ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the state, part of it thus becoming again the subject of interstate transportation, did not affect the power of the state to tax it all before that transportation commenced. Neither the appellant, the shippers, nor the carrier, at the time of the shipment of the gasoline from points of origin, arranged a destination for any part of the oil other than the appellant's storage tanks in Tennessee. Although in the usual course of business a variable and undefined part of it, when segregated for that purpose, would again be transportated across state boundaries, appellant was free to distribute the oil either within or without the state for use in its business or for any other purpose. As nothing in the transaction before the withdrawal from storage in Tennessee can be said to have given any ascertainable part of the gasoline a destination to points beyond the state, the case is distinguishable from Carson Petroleum Co. v. Vial, 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626, and Texas & New Orleans R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442. The oil in storage was not a subject of interstate commerce, and so was a part of the common mass of goods within the state, subject to local taxation. General Oil Co. v. Crain, supra; Susquehanna Coal Co. v. South Amboy, supra; Bacon v. Illinois, supra. Compare Atlantic Coast Line R. Co. v. Standard Oil Co., 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270.''

The case of Helson v. Commonwealth of Kentucky, supra, was distinguished as being a direct and immediate burden on the exclusively interstate commerce itself.

The Wyoming law (Rev. St. Wyo. 1931, sec. 115-1102) levies a tax on gasoline used or sold for domestic

consumption. An air transport company purchased gasoline both within and without the state which it intermingled in storage. It did not question the application· of the tax on gasoline sold at its airports or withdrawn for local use, but did contend that the tax could not be validly applied to gasoline imported from outside the state, stored in its tanks, and put in its interstate air planes for consumption. Following N., C. & St. L. Ry. Co. v. Wallace, supra, it was held in Edelman v. Boeing Air Transport, 289 U. S. 249, 53 S. Ct. 591, 592, 77 L. Ed. 1155, that as the storage and withdrawal of the gasoline was completed before the interstate journey began, the burden was too indirect and remote from the function of interstate commerce to transgress constitutional limitations. The court wrote:

> "A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce."

The Helson Case is again distinguished by pointing out that there the gasoline was placed in the tanks of the ferryboats outside of the state for use in operating them in interstate commerce.

See, also, State v. Silver Bow Ref. Co., 83 Mont. 380, 272 P. 684; Id. 78 Mont. 1, 252 P. 301; Hart Refineries v. Harmon, 81 Mont. 423, 263 P. 687, affirmed 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Burke v. Bass, 123 Neb. 297, 242 N. W. 606; Transcontinental & Western Air v. Lujan, 36 N. M. 64, 8 P. (2d) 103; State v. Standard Oil Company, 131 Me. 63, 159 A. 116; Jerome H. Sheip & Co. v. Amos, 100 Fla. 863, 130 So. 699; Varney Air Lines v. Babcock (D. C.) 1 F. Supp. 687; American Airways v. Wallace (D. C.) 57 F. (2d) 877; Eastern Air Transport v. South Carolina Tax Commission, 285 U. S. 147, 52 S. Ct. 340, 76 L. Ed. 673, affirming (D. C.) 52 F. (2d) 456.

We are of the opinion, therefore, that under the circumstances disclosed, the gasoline is subject to the tax with the accompanying penalties for omission of timely payment.

The judgment is reversed.