## GREGG DYEING CO. *v.* QUERY ET AL.*

No. 170.   Argued December 10, 1931.—Decided May 31, 1932.

*Mr. James M. Lynch,* with whom *Messrs. P. F. Henderson, Shepard K. Nash,* and *B. A. Morgan* were on the brief, for appellants.

---

* Together with No. 245, *City of Greenville et al.* v. *Query et al.*

*Messrs. John M. Daniel,* Attorney General of South Carolina, and *J. Fraser Lyon* were on the brief for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

By these actions, within the original jurisdiction of the Supreme Court of South Carolina, appellants sought to restrain the enforcement of the state statute known as the " Gasoline Tax Act of 1930." Acts So. Car., 1930, p. 1390. The statute was assailed upon state and federal grounds, the latter being that the act violated the commerce clause (Art. I, § 8, par. 3), and the equal protection clause of the Fourteenth Amendment, of the Federal Constitution. The state court overruled these contentions and dismissed the complaints. The cases are brought here by appeal.

474

The provisions of the statute which give rise to the federal questions are found in sections one and six as follows:

"Section 1. . . . Every person, firm, corporation, municipality, . . . in the State of South Carolina which shall import into this State from any other State or foreign Country, or shall receive by any means into this State, and keep in storage in this State for a period of twenty-four hours or more, after the same shall have lost its interstate character as a shipment in interstate commerce, any gasoline or any other like products of petroleum or under whatever name designated, which is intended to be stored or used for consumption in this State, shall pay a license tax of six cents per gallon for every gallon of gasoline, or other like products of petroleum aforementioned, which shall have been shipped or imported into this State from any other State or foreign country, and which shall hereafter, for a period of twenty-four hours after it loses its interstate character as a shipment of interstate commerce be kept in storage in this State to be used and consumed in this State by any person, firm, or corporation, municipality, . . . and which has not already been subjected to the payment of the license taxes imposed upon the sale thereof by acts of the General Assembly of the State of South Carolina, the same being Act No. 34, Acts of 1925, approved the 23rd day of March, 1925, and Act No. 102, Acts of 1929, approved the 16th day of March, 1929, imposing license taxes for the privilege of dealing in gasoline or other like products or petroleum; *Provided,* That this Act shall not impose a tax upon crude petroleum, residium [*sic*] or smudge oil: *Provided, further,* That one percent to cover loss by evaporation, spillage or otherwise shall be deducted by the taxpayer when remitting the tax required by this Act. . . .

"Section 6. Nothing within this Act shall be construed to impose a license tax upon any selling agent, consumer, or retailer, selling, consigning, shipping, distributing or using gasoline, combinations thereof, or substitutes therefor, which may have been bought from any oil company on which the license taxes imposed by Act No. 34, Acts of the General Assembly of 1925, approved the 23rd of March, 1925, and Act No. 102, Acts of the General Assembly of 1929, approved the 16th day of March, 1929, have been paid nor shall this Act be construed as applying in the case of interstate commerce."

In the case of *Gregg Dyeing Company* (No. 170), the facts alleged in the complaint were admitted by demurrer and other facts were stipulated as if the complaint had set them forth. It thus appeared that plaintiff conducted a bleachery in Aiken, South Carolina, and used gasoline in its processes; that its practice is to buy gasoline in bulk from dealers outside the State of South Carolina and to have the gasoline shipped in interstate commerce to plaintiff's plant where the gasoline is unloaded and stored, and kept in storage, in plaintiff's tanks, for more than twenty-four hours and until it is needed for use, and in its entirety is used by plaintiff in its manufacturing business and for its own purposes, and is not brought into the State for resale and is not resold; that there is in Charleston, South Carolina, a refinery maintained by the Standard Oil Company at which large quantities of gasoline are produced; that much of the gasoline thus produced, and much that is brought into the State by oil companies for resale, is stored within the State for more than twenty-four hours before it is sold or used, and is not taxed for its importation and/or storage in South Carolina, but is taxed when it is used or sold in that State by such oil companies; and that such gasoline, produced

in the refinery above-mentioned, as is shipped to other States is not taxed in South Carolina. Final judgment was rendered in favor of defendants upon the demurrer.

In the case brought by the *City of Greenville* (No. 245), plaintiff alleged that it was a municipal corporation which had brought into the State of South Carolina gasoline in tank car lots, purchased outside the State, and thereafter had stored, and used and consumed it for public purposes. Defendants demurred, there was an agreed statement of facts in addition to the allegations of the complaint, and the judgment upon the demurrer thus raised the same federal questions as those presented in the case first mentioned.

In maintaining rights asserted under the Federal Constitution, the decision of this Court is not dependent upon the form of a taxing scheme, or upon the characterization of it by the state court. We regard the substance rather than the form, and the controlling test is found in the operation and effect of the statute as applied and enforced by the State. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 362; *Hanover Fire Ins. Co.* v. *Harding,* 272 U. S. 494, 509, 510. The operation and effect of this tax act have been determined definitely by the state court in the instant cases. Construing the act, that court has said:

" The Act in question may be said to be complementary to the other statutes of South Carolina under which are assessed a gallonage tax on gasoline and other petroleum products. Indeed, it expressly excludes from its provisions all gasoline upon which a like tax has been paid under other statutes. It so declares in its title and specifically designates in its body the statutes, payment of the tax under which exempts from its burden. . . .

" In South Carolina, commencing about a decade ago, the General Assembly expressed its public policy as to revenue to be derived from the use of gasoline, vol. 32, Stat. at Large, p. 835. The tax then imposed was two

cents a gallon. In 1925, the tax was increased to five cents, and in 1929, to six cents on the gallon. These statutes, however, only reached 'dealers' in this commodity. . . .

" Statutes of this nature have been uniformly construed as imposing a tax on the ultimate consumer or user, as will be hereafter shown. Realizing that large users of gasoline either were evading or would evade the payment of the tax imposed under these Acts, by bringing in gasoline in quantities from without the State, and storing it for their own purposes, the Legislature in 1930 enacted the statute under consideration, applying the six cents tax to every person, firm, corporation, municipality or any subdivision subject to its terms. . . . Thus, with the Act of 1930 complementing the other statutes referred to, all consumers of gasoline in South Carolina pay a tax of 6 cents per gallon, no matter what the origin of, or State in which, the gasoline is produced. . . .

" On its face, the Act expressly negatives an intention to tax interstate commerce. It does not purpose to tax any gasoline until twenty-four hours after it has lost its interstate character. It seeks to operate only after the commodity has been severed from its interstate character and has become at rest as a part of the general mass of property in this State subject to the protection of its laws. . . .

" The tax here imposed is an excise tax and not a property tax. . . . All oil companies in South Carolina, including the Standard Oil Company in Charleston, S. C. are required to pay and do pay the tax upon any gasoline they sell and all that they use in South Carolina, whether it be for operating their trucks upon the highways or otherwise (34 Stat. at Large, p. 197). . . .

" The tax applies only to persons who store with intent to use and consume the gasoline in South Carolina. . . . Mere storage after manufacture or production is not

enough to provoke the application of the tax. The only kind of storage affected is that with intent to use and consume the product in South Carolina. Such intention on its part petitioner admits to exist in the instant case, and in all future transactions. The fact that the Standard Oil Company at Charleston, S. C. manufactures and produces large quantities of gasoline which is stored at its refinery and which is untaxed before its sale or use in South Carolina, does not, to our mind, work a discrimination against petitioner or producers in other States. It is admitted that that company, like all others, is required to pay and does pay a tax of six cents on all of its products sold in South Carolina or used and consumed in its business."

We may lay aside, as not here involved, any question relating to importations from foreign countries. As to interstate commerce, the questions are (1) whether the Act as applied by the state court imposes a direct burden upon that commerce, and (2) whether, although the subject of the tax would otherwise be within the power of the State, the tax is invalid because it creates an unconstitutional discrimination against transactions in interstate commerce.

As to the first question, we are not concerned with what the tax is called but with what the statute does. It imposes an exaction with respect to gasoline purchased in other States and brought into South Carolina and there placed by appellants in storage for future use within the State. By the terms of the Act, as construed by the state court and applied to these appellants, interstate commerce in relation to the subject of the tax has ended. The gasoline has come to rest within the State, having been placed in appellants' storage tanks and added to appellants' property kept for local purposes. In such circumstances the State has the authority "to tax the products or their storage or sale." *Texas Company* v.

*Brown,* 258 U. S. 466, 478; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 519, 520; *Hart Refineries* v. *Harmon,* 278 U. S. 499, 501, 502. Not only may local sales of gasoline thus brought into the State be taxed, but its use as well. This was specifically determined in *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 648, 649. See *Hart Refineries* v. *Harmon, supra; Breece Lumber Co.* v. *Asplund,* 283 U. S. 788. There is an exception in the case of a tax directly on use in interstate commerce, as on use in interstate transportation. *Helson* v. *Kentucky,* 279 U. S. 245, 252; *Eastern Air Transport* v. *South Carolina Tax Comm.,* 285 U. S. 147. In view of these well-established principles, we find no ground for concluding that the State could not impose the tax with respect to the gasoline of appellants which was kept within the State for use in their local enterprises. As the Court said, in *Hart Refineries* v. *Harmon, supra,* interstate transportation having ended, the taxing power of the State in respect of the commodity may, so far as the commerce clause of the Federal Constitution is concerned, " be exerted in any way which the State's constitution and laws permit." This, of course, is on the assumption that the tax does not discriminate against the commodity because of its origin in another State.

The state court answered the contention as to discrimination against interstate commerce by referring to other statutes of the State imposing a tax upon the sale and use of gasoline within the State. The state court said that the Act in question " taxes all gasoline stored for use and consumption upon which a like tax has not been paid under other statutes. By the kindred Acts all users are taxed." But appellants question the right to invoke other statutes to support the validity of the Act assailed. To stand the test of constitutionality, they say, the Act must be constitutional " within its four corners," that is,

considered by itself. This argument is without merit. The question of constitutional validity is not to be determined by artificial standards. What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution. There is no demand in that Constitution that the State shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the State's constitutional power. When the Supreme Court of the State has held that two or more statutes must be taken together, we accept that conclusion as if written into the statutes themselves. *Hebert* v. *Louisiana*, 272 U. S. 312, 317. See *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 73.

Reading together the statutes with respect to gasoline taxes, the state court took the view that as to the gasoline tax with respect to sales within the State, the burden actually rests upon the consumer, although not placed upon the consumer directly. No reason is found to challenge this view. *Texas Company* v. *Brown, supra,* at p. 479; *Panhandle Oil Co.* v. *Knox*, 277 U. S. 218, 222; *Indian Motocycle Co.* v. *United States*, 283 U. S. 570, 579. So far as dealers in gasoline within the State are concerned there appears to be no ground for appellants' claim of discrimination. The point with respect to appellants is that they are not dealers but users, consumers of gasoline in their business. They are required to pay the tax with respect to the gasoline they keep for such use and consumption within the State. As to such gasoline, they pay precisely the same amount per gallon as other consumers within the State are in effect required to pay through the tax on the dealers from whom such consumers buy. Discrimination is asserted in relation to manufacturers who produce gasoline within the State and consume it in their enterprises. Appellants have directed particular

attention to the case of a refining company which produces gasoline in South Carolina and consumes gasoline in its business and also sells it within the State. The state court, construing the applicable statute, has held that in such a case the producing company is taxed with respect to the gasoline it uses as well as with respect to the gasoline it sells. The decision is unequivocal that " all oil companies in South Carolina are required to pay and do pay the tax upon any gasoline they sell and all that they use in South Carolina." With respect, then, to the gasoline used by appellants in their business, there is in this aspect no discrimination against them because their gasoline has its origin in another State, as others either buying or producing gasoline within the State pay the tax at the same rate in relation to their consumption.

Discrimination, like interstate commerce itself, is a practical conception. We must deal in this matter, as in others, with substantial distinctions and real injuries. *Shaffer* v. *Carter*, 252 U. S. 37, 55. Appellants' attack upon the tax comes to this, in the last analysis, that the tax in their case is laid with respect to the gasoline they have bought outside the State and keep in storage for use and consumption in their business, whereas others are taxed, not with respect to the gasoline they keep in store for use and consumption, but for the gasoline they use and consume. But appellants have admitted, as the state court has said, that " the only kind of storage affected " is that for the purpose of use and consumption. In this view the state court found no distinction of substance with respect to the practical operation of the taxing statutes in *pari materia,* as all in like case, appellants and others who use gasoline in their business enterprises, pay the same amount on the gasoline they consume. Appellants had the burden of showing an injurious discrimination against them because they bought their gasoline outside the State. This burden they have

482

not sustained. They have failed to show that whatever distinction there existed in form, there was any substantial discrimination in fact.

The same considerations, with respect to discrimination, apply to the claim that the statute in question violates the equal protection clause of the Fourteenth Amendment. The statement of this Court in *General American Tank Car Corp.* v. *Day,* 270 U. S. 367, 373, is apposite: " In determining whether there is a denial of equal protection of the laws by such taxation, we must look to the fairness and reasonableness of its purposes and practical operation, rather than to minute differences between its application in practice and the application of the taxing statute or statutes to which it is complementary."

The right of the City of Greenville (No. 245) to raise the questions presented under the Federal Constitution does not appear to have been challenged or passed upon by the state court and has not been discussed at this bar. Accordingly, that question has not been considered here.

*Judgments affirmed.*