CENTRAL VERMONT RAILWAY, INC. *v.* MURDOCK A. CAMPBELL, COMMISSIONER OF MOTOR VEHICLES.

January Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ., and SHERMAN, Supr. J.

Opinion filed February 16, 1937.

512

*Lawrence C. Jones,* Attorney General, for the defendant.

*Horace H. Powers* for the plaintiff.

MOULTON, J. It is alleged in the bill of complaint that the plaintiff is a common carrier by railroad, operating within and

between the States of Vermont, Massachusetts and Connecticut; that the defendant is the commissioner of motor vehicles of the State of Vermont, and, as such, the enforcing officer of the gasoline tax statute, chapter 52 of title 8 of the Public Laws; that certain trains operated by the plaintiff in interstate commerce use gasoline for fuel; that the gasoline for such trains is purchased by the plaintiff at places outside the State of Vermont, and imported to five storage places within the State, where it is kept to await its use as fuel in interstate traffic; that such gasoline is at all times destined and earmarked for the exclusive use by the plaintiff in its interstate trains, and is so used; that the defendant demands payment of the tax assessed upon gasoline by chapter 52 of title 8 of the Public Laws, and threatens the plaintiff with the penalties provided by that law, unless the tax is paid. It is sought permanently to enjoin the defendant from attempting to enforce the statute. A temporary injunction was granted below. The defendant filed a demurrer to the bill, which was overruled, and a permanent injunction was entered. The defendant has appealed.

P. L. 1222, so far as material, defines the term "distributor," as used in Chapter 52, as "a person, firm or corporation who imports or causes to be imported gasoline or other motor fuel for use, distribution or sale within the state." By P. L. 1228 it is provided that each distributor "in all cases not exempt from such tax under the laws of the United States" shall pay a tax of four cents per gallon upon each gallon of such motor fuel sold by him, and "shall also pay to the commissioner a tax of four cents per gallon upon each gallon of such motor fuel used within the state by him." Other sections deal with licenses, records, reports required from distributors and penalties for noncompliance, but need not be specially noticed since no question arises concerning them. It does not appear that a distributor's license has been exacted from the plaintiff, or that records or reports have been demanded. Two questions are presented: (1) Whether the imposition of the tax upon use of gasoline purchased, imported and stored by the plaintiff in the manner and for the purpose alleged, is an unconstitutional interference with interstate commerce, and (2) whether the withdrawal of certain quantities of this gasoline from the storage tanks, for the purpose of filling the receptacles in the motor

cars of the plaintiff, is a "use" of it within the meaning of the statute.

■■ The tax is not to be condemned as a license tax upon the privilege of engaging in interstate commerce as in *Real Silk Hosiery Mills, Inc.* v. *City of Portland*, 268 U. S. 325, 69 L. ed. 982, 45 Sup. Ct. 525, neither is it to be upheld, at least so far as this plaintiff is concerned, as a tax demanded for the use of the highways of the State as in *Clark* v. *Poor*, 274 U. S. 554, 71 L. ed. 1199, 47 Sup. Ct. 702. It is an excise tax upon the domestic sale or use of the gasoline, measured by gallonage. *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 647, 65 L. ed. 1139, 41 Sup. Ct. 606, 608. It will be helpful to review at some length the recent decisions which are based upon similar enactments.

In *Edelman* v. *Boeing Air Transport*, 289 U. S. 249, 77 L. ed. 1155, 53 Sup. Ct. 591, a statute of Wyoming (Laws 1929, Ch. 139, § 1) levied a tax "on all gasoline used or sold in this State * * * for domestic purposes." The respondent maintained an airplane service, transporting passengers, mail and express in interstate traffic. It purchased gasoline, both within and without the State, which it intermingled and stored in tanks at its two airports in Wyoming. It paid, without objection, the tax on gasoline purchased within the State, upon which such tax had not been paid by the wholesaler, and the tax on all gasoline which it sold within the State at its airports, or which it withdrew from the tanks for local use. But it was contended that the tax could not validly be applied to the gasoline, imported from outside the State, stored in the tanks at its airports and used for filling the interstate airplanes in which it was eventually consumed. The Court said that as the statute had been administratively construed and applied, the tax was not levied upon the consumption of gasoline in the respondent's interstate planes, but was applied to the stored gasoline as it was withdrawn from the storage tanks at the airport and placed in the planes. "No tax is collected for gasoline consumed in respondent's planes either on coming into the State or on going out. It is at the time of withdrawal alone that 'use' is measured for the purposes of the tax. The stored gasoline is deemed to be 'used' within the State and therefore subject to the tax, when it is withdrawn from the tanks * * *. A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage

within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce'' (p. 1157, L. ed.).

It may be noted that, on the first trial of the Edelman case, in the United States District Court [51 Fed. (2d) 130, 133], the tax was upheld upon the ground that, since the statute provided, in substance, that the tax received from gasoline used at any municipal airfield within the State should be applied to the maintenance and improvement of the field, and since the interstate carrier by contract had the privilege of using such airfields, the case came within the principle that where a State at its own expense furnishes facilities for interstate and intrastate commerce, it may exact a reasonable compensation therefor. In the next trial before the Circuit Court of Appeals [61 Fed. (2d) 319], a distinction was drawn between gasoline purchased outside the State, and that purchased within it, as to the former the tax being held invalid and, as to the latter, valid. But in the Supreme Court the only issue considered was ''whether the taxation of the gasoline which respondent withdraws from storage and uses for 'filling' its planes imposes an unconstitutional burden on interstate commerce'' (p. 1157, L. ed.).

In *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace,* 288 U. S. 249, 77 L. ed. 730, 53 Sup. Ct. 345, 87 A. L. R. 1191, a Tennessee statute (Pub. Acts 1925, Ch. 67, § 2) provided for a gallonage tax on gasoline to be applied to persons, firms or corporations, dealers or distributors storing gasoline, and distributing the same or allowing it to be withdrawn from storage whether for sale or other use. The facts are thus stated in the opinion (p. 737, L. ed.): ''Appellant, an interstate rail carrier, purchases large quantities of gasoline outside the state of Tennessee and brings it into the state in tank cars, from which it is unloaded and placed in its own storage tanks. None of it is sold by appellant, but all is withdrawn and used by it as a source of motive power in interstate railway operation in Tennessee, Kentucky, Alabama and Georgia. Storage of the gasoline is a preliminary step to such use in interstate commerce. The tax is assailed both on the ground that it is imposed on the gasoline while still a subject of interstate commerce in the course of transportation from points of origin to points outside the state of Tennessee; and on the ground that it is in effect a tax upon the use of the gasoline in appellant's business as an interstate

carrier, and is thus an unconstitutional burden on interstate commerce.'' It was held (1) that ''the gasoline, upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce and lost its immunity as such from state taxation (p. 737, L. ed.) notwithstanding its prospective use as an instrument of interstate commerce; and (2) that it could not be said that the tax was a forbidden burden on interstate commerce because the gasoline was used, subsequent to the incidence of the tax, as an instrument of such commerce; and that there could be no valid objection to the taxation of any right or power incident to the ownership of the gasoline which fell short of a tax imposed on its use in interstate commerce. ''Here,'' said Mr. Justice Stone (p. 737, L. ed.), ''the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are completely exercised before the use of the gasoline in interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations.''

*Eastern Air Transport, Inc.* v. *South Carolina Tax Commission,* 285 U. S. 147, 76 L. ed. 673, 52 Sup. Ct. 340, was a suit brought to restrain the collection of a gallonage tax upon gasoline purchased by the complainant in South Carolina and used by it in interstate commerce, upon the ground that the statute imposing the tax placed a direct burden upon such commerce (Act Feb. 23, 1922 [32 St. at Large S. C., p. 835, § 1] as amended by Act March 16, 1929 [36 St. at Large S. C., p. 107]). The tax was added to the price of the gasoline by the dealer from whom it was purchased by the complainant. It was held that if such tax were regarded as in effect a tax upon the goods sold, its validity in the circumstances could not be questioned, as in that aspect the tax would be upon the gasoline as a part of the general mass of property within the State and hence subject to the State's authority to tax, although the property might be actually used in interstate commerce; and treating the tax as an excise tax upon the sales did not change the result, as the sales were purely intrastate transactions (pp. 674, 675, L. ed.). This decision, impliedly at least, overrules *Mid-Continent Air Express Corporation* v. *Lujan* [U. S. District Ct.], 47 Fed. (2d) 266,

where a statute which is identical in effect was held to be invalid. The Lujan case was cited but not followed in *American Airways, Inc.* v. *Wallace,* which will be the next decision reviewed.

In *American Airways, Inc.* v. *Wallace,* 57 Fed. (2d) 877 [affirmed 287 U. S. 565, 77 L. ed. 498, 53 Sup. Ct. 15] a Tennessee statute imposed a gasoline tax upon "storers and distributors * * * on the basis of their withdrawals and distributions," the tax to accrue whether such withdrawal was for sale "or other use." Pub. Acts 1923, Ch. 58, as amended by Pub. Acts 1925, Ch. 67. The plaintiff, a nonresident corporation, was a common carrier by air, engaged almost entirely in interstate business. It purchased gasoline outside of the State, brought it into the State and stored it in tanks at its landing fields, from which it was withdrawn and put into the company's airplanes as needed. It was withdrawn for no other purpose. An injunction was sought to restrain the collection of the tax thereon. It was held that: "It is not a regulation of or burden upon interstate commerce, for a state to impose a lawful tax upon the subject or instrumentality of commerce * * *. It is not the intent with which the gasoline is to be used that determines the liability for taxes, but it is the status of the gasoline at the time * * *. The statute in question does not impose a property tax upon the gasoline, but it imposes an 'excise' or 'privilege' tax upon the business of storing and withdrawing the gasoline and the amount is computed upon withdrawals * * *. Plaintiff's gasoline is brought into the state in interstate commerce and it comes to rest in the state * * * thereby terminating the interstate transportation, and is, therefore, not being transported in interstate commerce when it is withdrawn, which is the time the tax accrues. The storage and withdrawal, being completed in Tennessee, is an intrastate transaction" (p. 880). The tax was held to be valid.

In *American Airways, Inc.* v. *Grosjean,* 3 Fed. Supp. 995 [aff. 290 U. S. 596, 78 L. ed. 524, 54 Sup. Ct. 129], a statute of Louisiana (Act No. 6 of 1928, Ex. Sess., as amended by Act No. 8 of 1930, and Act No. 16 of 1932; Act. No. 1 of 1930, Ex. Sess.), levied a gallonage tax upon all gasoline or motor fuel "sold, used or consumed in the State of Louisiana for domestic consumption" and provided for its collection from "all persons, firms or corporations or associations of persons, engaged as dealers in the handling, sale or distribution of such products

within the State of Louisiana.'' As far as here material, a ''dealer'' was defined to be ''a person, firm, corporation or association of persons who imports such gasoline * * * from any other state or foreign country for distribution, sale or use within the state of Louisiana.'' The plaintiff operated a line of airplanes on regularly established schedules over interstate routes, less than 5 per cent. of its business being intrastate in character. It imported gasoline from Texas, which it placed in its storage tanks at two places in Louisiana, from whence it was withdrawn and carried in tank wagon trucks to its airports in Louisiana, where it was pumped into the company's airplanes as required. The plaintiff sought to enjoin collection of the tax on such gasoline, claiming that it was tantamount to taxing the privilege of using an instrumentality of interstate commerce, since all of its gasoline was used in such commerce. It was held (p. 996) that the tax was not imposed for the privilege of engaging in interstate commerce, or upon the use of an instrumentality in interstate commerce, but was an excise tax, not laid upon the gasoline, but upon the right or privilege of selling, using or consuming it. Citing *Edelman* v. *Boeing Air Transport, supra,* the Court said: ''A state may tax the 'use' to which gasoline is put in withdrawing it from storage within the state and it is at the time of withdrawal alone that 'use' is measured for the purpose of the tax as the stored gasoline is deemed to be 'used' within the state and therefore subject to the tax when it is withdrawn from the tanks'' (p. 996).

In *Commonwealth* v. *Dixie Greyhound Lines, Inc.* (1934), 255 Ky. 111, 72 S. W. (2d) 1032, a gallonage tax was imposed upon gasoline sold at wholesale within the State of Kentucky, and the statute provided that the term ''at wholesale'' should be construed ''also to mean and include any person who shall purchase or obtain gasoline without the state and sell or distribute or use the same within the State.'' Ky. Stat. 1930, § 4224b-1. The appellee was a foreign corporation, operating an interstate line of busses, a comparatively small part of its business being intrastate. It purchased gasoline outside the State, and stored it at its station in Paducah, Ky., where it was distributed to its busses as needed. It was held (116-118): ''All of this gasoline lost its interstate character when it came to rest in Kentucky, and, though much of it was withdrawn for use in interstate transportation, it acquired a local situs and became subject

to the state's taxing power, for the commerce clause of the Federal Constitution [Const. U. S. art. 1, Sec. 8, cl. 3] does not give immunity from undiscriminative local taxation of movable property unless it is in actual, continuous transit in interstate commerce. *Champlain Realty Company* v. *Brattleboro*, 260 U. S. 366, 67 L. ed. 309, 43 Sup. Ct. 146, 25 A. L. R. 1195. There was no continuity of transit * * *. The power to impose a reasonable and nondiscriminatory tax on the storage, sale, or use of gasoline is uniformly recognized as a valid exercise of the taxing power unless the statute contravenes some peculiar provision of a state Constitution or violates the interstate commerce clause of the Federal Constitution * * *. Aside from the matter of sale and use, the imposition of the tax on gasoline purchased out of the state and stored therein to be withdrawn and used by the same person is also valid * * * (p. 118). The question becomes narrowed to whether storage and withdrawal for consumption in an instrumentality of interstate commerce gives freedom from the tax. We have ample authority for holding that the commodity is not immunized on that account.'' The Court upheld the tax upon the authority of *Nashville, Chattanooga & St. L. Ry.* v. *Wallace, supra,* and *Edelman* v. *Boeing Air Transport, supra,* quoting from the latter opinion the statement that

''A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding .that its ultimate function is to generate motive power for carrying on interstate commerce.''

In the instant case the plaintiff's gasoline, although it had been a subject of interstate commerce while it was in transit from the place of its purchase outside of the State, had come to rest, its journey ended, and had become a part of the mass of property in the State, and was subject to state taxation, there being no discrimination against it because of its origin in another state. See *Gregg Dyeing Co.* v. *Query,* 286 U. S. 472, 478, 479, 52 Sup. Ct. 631, 633, 634, 84 A. L. R. 831, 76 L. ed. 1232, 1237; *Hart Refineries* v. *Harman,* 278 U. S. 499, 501, 73 L. ed. 475, 476, 49 Sup. Ct. 188; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. ed. 1095, 43 Sup. Ct. 643, 646, 647. The principle that a temporary halt in the movement of interstate com-

520

merce does not break its continuity and render the merchandise, which is the subject of it, taxable in the state where the interruption occurs, as stated in *Carson Petroleum Co.* v. *Vial*, 279 U. S. 95, 109, 73 L. ed. 626, 49 Sup. Ct. 292, 296; *Hughes Bros. Co.* v. *Minnesota*, 272 U. S. 469, 475, 71 L. ed. 359, 47 Sup. Ct. 170, 172; and *Champlain Realty Co.* v. *Brattleboro*, 260 U. S. 366, 67 L. ed. 309, 43 Sup. Ct. 146, 148, 149, 25 A. L. R. 1195, is not applicable here. As is said in the last cited case, "The interstate commerce clause of the Constitution does not give immunity to movable property from local taxation which is not discriminative unless it is in actual continuous transit in interstate commerce." And the tax may be imposed upon the commodity itself or upon its sale or use. *Hart Refineries* v. *Harman, supra; Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 648, 65 L. ed. 1139, 1145, 41 Sup. Ct. 606, 608.

██ ██ The fact that the prospective employment of the gasoline is in interstate commerce does not change the situation. *Edelman* v. *Boeing Air Transport, supra; American Airways* v. *Wallace, supra; Hughes Bros. Co.* v. *Minnesota, supra.* "It is elementary that a state may tax property used to carry on interstate commerce." *New Jersey Bell Tel. Co.* v. *State Board*, 280 U. S. 338, 346, 74 L. ed. 463, 467, 50 Sup. Ct. 111, 113. The only qualification is that the tax must place no direct burden upon such commerce, and, as we have seen, an excise tax upon the sale or use of gasoline, destined to be employed as furnishing motive power for interstate transportation, if imposed before such transportation has commenced, is a purely domestic transaction, places no forbidden burden upon interstate commerce and comes within no constitutional prohibition. See cases heretofore cited and discussed.

The plaintiff argues that in *Edelman* v. *Boeing Air Transport*, and *Nashville, Chattanooga & St. L. Ry. Co.* v. *Wallace*, the gasoline was imported without definite assignment for interstate use, and was subsequently used for both interstate and intrastate transportation, while here it was destined and used solely in interstate commerce. This is true with regard to the former case, but in the latter decision it is distinctly stated that all of the imported motor fuel was withdrawn and used in interstate commerce. The same situation appears to have existed in *American Airways, Inc.* v. *Grosjean, supra. Gregg Dyeing Co.* v. *Query*, 286 U. S. 472, 76 L. ed. 1232, 52 Sup. Ct. 631, 84

A. L. R. 831, is not in point since the only issue was the validity of a tax upon imported gasoline stored for subsequent local use. We fail to find substance in the distinction which the plaintiff seeks to draw.

Two decisions, *Helson* v. *Kentucky*, 279 U. S. 245, 73 L. ed. 683, 49 Sup. Ct. 279, and *Bingaman* v. *Golden Eagle Western Lines*, 297 U. S. 626, 80 L. ed. 928, 56 Sup. Ct. 624, relied upon by the plaintiff, are distinguishable from the case in hand.

*Helson* v. *Kentucky* arose from an attempt by the State of Kentucky to enforce a tax upon gasoline consumed within the limits of the state in furnishing motive power for an interstate ferry boat. The plaintiffs in error, who were citizens and residents of Illinois, and there maintained their office and place of business and the situs of their personal property, purchased and received the gasoline in Illinois. The ferry did an exclusively interstate business. It was held (p. 252, U. S., p. 687, L. ed.), that the tax was exacted as the price of the privilege of using an instrumentality of interstate commerce. "A tax laid upon the use of the ferry boat would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected."

In *Bingaman* v. *Golden Eagle Western Lines*, a statute of New Mexico provided an excise tax of five cents a gallon "upon the sale and use of all gasoline and motor oil." Laws 1933, Ch. 176, § 2. The appellee, a Delaware corporation, was a common carrier operating a line of busses over the highways of New Mexico in interstate transportation only. The busses were propelled by gasoline which was purchased in another state, placed in tanks attached to the busses and transported and used exclusively in interstate commerce. It was sought to enjoin the collection of the tax upon such gasoline. Following the construction placed upon the statute by the New Mexico Supreme Court, it was held that the tax was not a charge as compensation to the state for the use of its highways, but was an excise tax for the use of an instrumentality of interstate commerce, and as such,

522

upon the authority of *Helson* v. *Kentucky, supra,* a clear contravention of the commerce clause of the Federal Constitution (art. 1, § 8, cl. 3).

In both of these cases, the gasoline was, at the time of the imposition of the tax, in active use as an instrumentality of, and being carried in, interstate commerce. In commenting upon the Helson case, it is said, in *American Airways* v. *Wallace:* "There is an obvious distinction between taxing gasoline used for motor fuel in interstate commerce, and taxing the business of storing gasoline within the state, and distributing or allowing same to be withdrawn from storage for sale 'or other use'" (p. 881). And in *Nashville, Chattanooga & St. L. Ry.* v. *Wallace, supra* (p. 350, Sup. Ct. Rep.), it is pointed out that the tax in the Helson case was directly imposed upon the use of the gasoline in generating power for the interstate ferry boat. See also *Edelman* v. *Boeing Air Transport, supra* (p. 590, Sup. Ct. Rep.). The Bingaman case, although concerned with motor fuel carried in tanks attached to interstate busses, is the same in legal effect as the Helson case.

To these cases may be added *United Airways, Inc.* v. *Shaw,* 43 Fed. (2d) 148, where the statute laid a tax on all gasoline consumed within the State of New Mexico. As applied to gasoline consumed by airplanes operating in interstate commerce, the tax was held to be a direct burden upon such commerce, and therefore invalid. The distinction between that case and the one in hand is clearly seen, and appears in *American Airways, Inc.* v. *Wallace, supra,* p. 881.

▮ There remains to consider the question whether the word, "used," in P. L. 1228, includes the process of withdrawal from storage. The meaning to be given to the word is important, for if it denotes simply the consumption of gasoline, the tax is clearly invalid when applied to fuel consumed in interstate transportation, for then the gasoline is being actively employed as an instrumentality of interstate commerce, and being carried therein, and, following the authority of the Helson and Bingaman cases, a direct burden is placed thereon. But if the "use" is taken to mean the withdrawal from storage, then, as we have seen, it is a purely domestic transaction which is completed before any interstate operation begins; and in such case, although the purpose of the withdrawal is thereafter to furnish motive power to propel an interstate train, and it is actually

so employed, it constitutes only an indirect burden on interstate commerce which is not prohibited by any constitutional provision.

When a statute is susceptible of two constructions, one of which supports it and gives it effect, and the other renders it unconstitutional and void, the former is to be adopted, even though the latter may be the more natural interpretation of the language used, for an act is never to be construed as unconstitutional if a reasonable construction can be placed upon it which will render it valid. *State* v. *Clement Nat. Bank*, 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *United States* v. *La Franca*, 282 U. S. 568, 574, 75 L. ed. 551, 51 Sup. Ct. 278, 281. Every presumption is to be indulged, and doubts are to be resolved in favor of the validity of a statute. *Graves* v. *Minnesota*, 272 U. S. 425, 428, 71 L. ed. 331, 47 Sup. Ct. 122, 123; *Corporation Commission* v. *Lowe*, 281 U. S. 431, 438, 74 L. ed. 945, 50 Sup. Ct. 397, 399. The presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute. *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.*, 282 U. S. 251, 257, 258, 75 L. ed. 324, 51 Sup. Ct. 130, 132, 72 A. L. R. 1163; *Railway Express Agency* v. *Comm. of Virginia*, 282 U. S. 440, 444, 75 L. ed. 450, 51 Sup. Ct. 201, 202, 71 A. L. R. 102.

As we have seen, it is said in the Edelman case that "A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state * * *," and this language is quoted and approved in *American Airways, Inc.* v. *Grosjean, supra,* and *Commonwealth* v. *Dixie Greyhound Lines, Inc., supra.* The statute in the Edelman case imposed the tax "on all gasoline used or sold in this state * * * for domestic consumption" (Laws Wyo. 1929, Ch. 139, § 1), and this is, in legal effect, the same as P. L. 1228, providing for the payment of a tax upon "each gallon of such motor fuel sold by the distributor," and also "upon each gallon of such motor fuel used within the state by him." In the Grosjean case the tax was imposed upon all gasoline "sold, used or consumed within the State of Louisiana for domestic consumption." Here, again, so far as the words, "sold" and "used," are concerned, the statute is substantially the same as P. L. 1228. The same is true of the statute in *Com-*

*monwealth* v. *Dixie Greyhound Lines, Inc., supra.* In *Nashville, C. & St. L. R. Co.* v. *Wallace,* and *American Airways, Inc.* v. *Wallace,* in which the same statute was in issue, the tax was laid upon the business of storing or distributing gasoline or allowing the same to be withdrawn from storage whether for sale or other use. This act differs in its language from those heretofore noticed, but is the same in effect, for the Court, in the Edelman case, in speaking of the tax therein under consideration, said, ''Such a tax cannot be distinguished from that considered and upheld in * * * *Nashville, C. & St. L. R. Co.* v. *Wallace*'' (p. 1157, L. ed.).

We hold that when gasoline is withdrawn from storage, under the circumstances shown in this cause, it is ''used'' within the meaning of P. L. 1228. Indeed, it would appear that the only feasible time for measuring the amount of gasoline used, for the purpose of ascertaining the tax thereon, is when it is withdrawn, where the distributor has not elected to pay the tax upon the gross quantity of the motor fuel purchased or imported, etc., by him, less tare of 1 per cent in the manner provided by P. L. 1229. The plaintiff argues that the opinion in the Edelman case does not construe the word, ''use,'' to include storage. This may be so, but here the process sought to be taxed is not the storage but the withdrawal from storage.

In holding, as we do, that the tax is valid and enforceable, we have not been unmindful of the rule that tax laws are to be interpreted liberally in favor of the taxpayer and that words defining things to be taxed may not be extended beyond their clear import. *Miller* v. *Nut Margarine Co.,* 284 U. S. 498, 508, 76 L. ed. 422, 52 Sup. Ct. 260, 262; *Hartland* v. *Damon's Est.,* 103 Vt. 519, 530, 156 Atl. 518. However, the intention of the Legislature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law. *In re Fulham's Estate,* 96 Vt. 308, 317, 119 Atl. 433.

It follows that it was error to overrule the demurrer.

*Decree reversed and cause remanded.*

Powers, C. J., dissents on the interpretation of the tax statute involved.

## On Motion for Reargument.*

Moulton, J.　　The plaintiff has moved for a reargument of this cause. The defendant objects that the motion comes too late, since it was not made until after the mandate had been sent down and entered in the court of chancery. But the final decree had not been enrolled and so the objection is unavailing. P. L. 1327.

The ground for the reargument is that in construing P. L. 1228 we have improperly invoked the rule which requires us if possible so to construe a statute that its constitutionality will be sustained. It is claimed that this doctrine is inapplicable to the situation, since the meaning of the word "use" involves, in this case, no constitutional question.

In the brief filed by the plaintiff when the cause was argued it is said that "the word 'use' in ordinary usage means the consumption and enjoyment of property," that "the word 'use' means consumption and nothing else," and that "the 'use' intended by the plaintiff was consumption of gasoline in interstate commerce." In the opinion, we called attention to the fact that if only this meaning should be given to the word, the statute would be invalid as applied to such transportation, and in this connection we stated the rule requiring a constitutional interpretation. That a recognized construction of "use" includes withdrawal from storage, under such circumstances as here disclosed, is shown by the authorities cited, and so, even without recourse to the rule to which reference has been made, there is a sufficient basis for our decision.

*Motion for reargument denied. Let full entry go down.*

Powers, C. J., dissents.

---

* Opinion on motion for reargument filed May 4, 1937.