[Sac. No. 5205. In Bank.—May 18, 1939.]

DOUGLAS AIRCRAFT COMPANY, INC., (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

[Sac. No. 5208. In Bank.—May 18, 1939.]

CHANSLOR–CANFIELD MIDWAY OIL COMPANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

[Sac. Nos. 5209, 5210, 5211, 5212, 5213, 5214. In Bank.—May 18, 1939.]

KETTLEMAN NORTH DOME ASSOCIATION (a Corporation), Appellant, v. STATE OF CALIFORNIA (a Body Politic), et al., Respondents.

H. W. Elliott, Edward P. Fogg, L. W. Butterfield and George W. Nilsson for Appellants.

U. S. Webb, Attorney-General, and H. H. Linney and James J. Arditto, Deputies Attorney-General, for Respondents.

THE COURT.—The three named plaintiffs noticed these appeals from judgments entered by the court below following the sustaining of demurrers to their respective complaints. By stipulation the appeals have been consolidated.

The actions were instituted under section 29 of the Use Tax Act of 1935 (Stats. 1935, chap. 361, p. 1297) by plaintiffs to recover taxes paid by them under that statute. No question is raised regarding the compliance by plaintiffs with the procedural requirements of the act dealing with the recovery of taxes paid under protest. The only issues involved relate to the constitutional authority of the state to impose the tax in question.

From the complaints, which are substantially identical, it appears that the plaintiffs Kettleman North Dome Association and Chanslor-Canfield Midway Oil Company are each engaged in this state in the business of drilling for and producing oil, gas and other petroleum substances; that plaintiff Douglas Aircraft Company, Inc., is engaged in the business of designing, manufacturing and fabricating airplanes and airplane parts; that since the effective date of the Use Tax Act all of the plaintiffs have purchased and are still purchasing supplies, equipment and machinery used by them in their respective businesses; that these purchases were made out-

side the state of California and from dealers not maintaining a place of business in this state; that, as required by the terms of the Use Tax Act, plaintiffs filed with the state board of equalization returns disclosing the above purchases, and paid the amount of the tax imposed by the act; that with said returns plaintiffs filed written protests in which the unconstitutionality of the act was alleged. The plaintiff Douglas Aircraft Company, Inc., alleged, in addition, that much of the tangible personal property purchased by it outside the state consists of special tools, machinery, materials and supplies which cannot be purchased in this state, and can be acquired only from sellers not maintaining places of business within this state. It is conceded that in all of the cases the property was purchased by the plaintiffs outside the state for their own use, and not for resale, and was shipped direct to them in interstate transactions.

Appellants urge that the Use Tax Act is unconstitutional for two main reasons:

1. That the tax imposed by the act, in operation and effect, is a property tax, and is therefore unconstitutional because not levied in proportion to the value of the property and because it imposes double taxation, in violation of article XIII, sections 1 and 14 of the state Constitution; further, if the tax imposed is an excise tax, then it violates article I, section 1, of the state Constitution, in that it is a tax on the right of ownership as such, which is a nontaxable privilege; and

2. The tax constitutes a direct burden upon and discriminates against interstate commerce in violation of the commerce and due process clauses of the Constitution of the United States.

This last contention has been exhaustively briefed and vigorously argued by appellants. After the filing of all of the briefs, the United States Supreme Court passed upon this identical question. It held, in cases where the interstate nature of the transactions was much closer than in the instant cases, that the Use Tax Act of California does not violate either the commerce clause of or the Fourteenth Amendment to the federal Constitution. (*Southern Pac. Co.* v. *Gallagher*, (Jan. 30, 1939) 306 U. S. 167 [59 Sup. Ct. 389, 83 L. Ed. 586]; *Pacific Tel. & Tel. Co.* v. *Gallagher*, (Jan. 30, 1939) 306 U. S. 182 [59 Sup. Ct. 396, 83 L. Ed. 595]; see, also, *Felt & Tarrant Mfg. Co.* v. *Gallagher*, (Jan. 30, 1939) 306

U. S. 62 [59 Sup. Ct. 376, 83 L. Ed. 488].) These decisions are conclusive on this court on these issues. On the authority of the above cases it must be held that appellants' second point is without merit.

Equally untenable is the first contention of appellants. The argument on this point is that if the tax is a property tax it violates the provisions of article XIII of the Constitution. Section 1 of that article provides that ''all property in the state except as otherwise in this Constitution provided . . . shall be taxed in proportion to its value''. Section 9a provides that taxes levied on personal property where not secured by real estate, shall be based on the tax levied on real property for the preceding year. Section 14, as amended in 1933, however, confers upon the legislature wide discretion in classifying or exempting from taxation any and all kinds of personal property. One of respondents' contentions is that even if the tax is a property tax it would be valid under section 14. Appellants contend that any special tax on personal property violates section 1, that section, according to their contention, requiring uniformity and equality in taxation, and prohibiting double taxation. We do not find it necessary to pass upon this point for the reason that we are of the opinion that the tax is an excise tax, and therefore the provisions of article XIII have no application. (*Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638 [103 Pac. 341] ; *Ingels* v. *Riley,* 5 Cal. (2d) 154 [53 Pac. (2d) 939, 103 A. L. R. 1].)

Before directly discussing the contention of appellants that the statute in question imposes a property tax, some brief reference must be made to the provisions of the statute. The title of the act provides in part as follows : ''An act imposing an excise tax on the storage, use or other consumption in this State of tangible personal property.'' Section 2 (a) defines ''storage'' as ''any keeping or retention in this State for any purpose except sale in the regular course of business of tangible personal property purchased from a retailer''. The term ''use'' is defined in section 2 (b) as ''the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business''. Section 3 provides that ''An excise tax is hereby imposed on the storage, use or other con-

sumption in this State of tangible personal property purchased from a retailer on or after July 1, 1935, for storage, use or other consumption in this state at the rate of three per cent of the sales price of such property." Section 4 exempts from the operation of the tax, among other things, the storage, use or other consumption of property the gross receipts from the sale of which are taxed under the sales tax; motor vehicle fuel, the gross receipts from the sale or distribution of which are taxed under the Motor Vehicle Fuel License Tax Act; and food products purchased for human consumption which are exempted from the sales tax.

Appellants concede that the sales tax and the motor vehicle license tax are excise and not property taxes. It will be noted that when the use tax is considered in connection with the other two taxes mentioned, the legislature has provided a comprehensive taxing system applicable to the sale, use, storage or consumption of personal property. The three taxes are mutually exclusive, each taxing privileges not taxed by the other two.

There can be no doubt of the propriety of considering all three taxes together, although only one of them is here under attack. The United States Supreme Court has ruled that in considering the validity of a use tax, other taxes to which it is complementary must also be considered. (*Gregg Dyeing Co.* v. *Query,* 286 U. S. 472 [52 Sup. Ct. 631, 76 L. Ed. 1232, 84 A. L. R. 831] ; see, also, *Vancouver Oil Co.* v. *Henneford,* 183 Wash. 317 [49 Pac. (2d) 14].)

The inherent fairness of the use tax, when it is read in conjunction with the statutes to which it is complementary, is obvious. The United States Supreme Court in *Henneford* v. *Silas Mason Co.,* 300 U. S. 577 [57 Sup. Ct. 524, 81 L. Ed. 814], upheld as constitutional a Washington statute imposing a use or "compensating tax" substantially similar to the one here involved. In so doing that court had the following to say about the purpose and effect of such statutes (p. 581) :

"The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of drain upon the revenues of the state, buyers being no longer

tempted to place their orders in other states in the effort to escape payment of the tax on local sales.''

The determination of whether a particular tax is a property or excise tax is not always an easy matter. In discussing this problem in *Ingels* v. *Riley, supra,* page 159 it is stated:

''The distinction between a tax on a privilege and a property tax is many times a close one. Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such it is to be distinguished from the license tax on regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. (37 Cor. Jur., p. 171, sec. 9, and cases cited.)

''It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents, and from the natural and legal effect of the language employed in the statute.''

Applying this test to the statute here under consideration we have no hesitancy in holding that the tax imposed is an excise tax, for revenue purposes, levied on the privilege of use, storage or consumption. ▪ In the first place, as indicated by the quotations from the statute, *supra,* the legislature has denominated the levy an excise tax. Although not conclusive this is entitled to considerable weight in ascertaining the nature of the tax. In *Ingels* v. *Riley, supra,* page 160, this rule of construction is stated as follows:

''Although the designation made by the legislature is not conclusive on the courts, some weight must be given such designation in determining the nature of the tax. In *San Francisco* v. *Liverpool etc. Ins. Co.,* 74 Cal. 113 [15 Pac. 380, 5 Am. St. Rep. 425], this court in discussing the character of a tax, had recourse to this factor. *In the Opinion of the Justices, supra,* 250 Mass. 591, 597 [148 N. E. 889], the Massachusetts court, in advising the legislature of that state as to the nature of a proposed taxing statute on motor vehicles, based on value, identical in many respects with the one here involved, stated:

" 'Avowedly an excise tax is established. The declaration to that effect is explicit. Such statutory statement is to be accepted as true unless incompatible with the meaning and effect of the act as a whole.'

"In *Storaasli* v. *State of Minnesota,* 283 U. S. 57 [51 Sup. Ct. 354, 75 L. Ed. 839], the United States Supreme Court, in interpreting a statute almost identical with the one here involved, emphasized the fact that the legislature had denominated the charge a privilege tax."

■ In the second place it is obvious, from a reading of the act, that the tax here levied is not imposed on the ownership of property as such. It does not apply to the use of property to be resold. It does not recur annually, but falls due only once. It is not imposed on a fixed day, although it is collectible quarterly—in short, it does not fall upon the owner because he is the owner, regardless of the use or disposition he may make of the property. It is imposed on certain of the privileges of ownership, but not on all of them.

The contention made by the appellants that a use tax, such as is here involved, is in fact a tax on ownership of property and is not a tax on the privilege of use, storage or consumption, is not a new one. It has been made in one form or another in attacking nearly every use tax statute that has been enacted. There is a long line of authorities, most of them of recent date, holding that use taxes, including taxes imposed on the privilege of use, or storage, or withdrawal from storage, are excise taxes and not property taxes. In *Gregg Dyeing Co.* v. *Query, supra,* the United States Supreme Court upheld as imposing an excise tax a South Carolina statute levying a tax on the storage of foreign gasoline when stored for future use. When the same cause was before the South Carolina court the tax was designated by it (166 S. C. 117 [164 S. E. 588]) as "an excise tax and not a property tax". The same court in *Nashville C. & St. L. Ry.* v. *Wallace,* 288 U. S. 249 [53 Sup. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191], upheld a Tennessee statute imposing a tax on the privilege of selling, storing or distributing gasoline, the tax being payable on the withdrawal from storage. In *Bowman* v. *Continental Oil Co.,* 256 U. S. 642 [41 Sup. Ct. 606, 65 L. Ed. 1139], the court, in answering the contention that a New Mexico statute levying a tax on the sale or use of gasoline was in fact a property tax and therefore void

under the state Constitution, stated (p. 649) : ''The tax imposed by the act under consideration upon the 'sale or use of all gasoline sold or used in this State' is not property taxation, but in effect, as in name, an excise tax.'' In *West India Oil Co.* v. *Gallardo,* 6 Fed. (2d) 523, the court upheld a 10 per cent tax levied by Porto Rico on all automobiles produced, manufactured, sold or used in Porto Rico. The court stated (p. 525) : ''We think it plain that this is an excise tax on sale or use, and not an import tax. . . . Equally untenable is the contention that this is a tax on property and void for lack of uniformity. The tax is upon automobiles 'manufactured, sold or used in Porto Rico'. It is not a tax upon ownership as distinguished from the production, sale or use.'' In *American Airways* v. *Wallace,* 57 Fed. (2d) 877, the court had under consideration the validity of a Tennessee statute imposing a tax on persons engaged in the business of selling, storing or distributing gasoline. In discussing the nature of the tax the court stated (p. 880) : ''The statute in question does not impose a property tax upon the gasoline, but it imposes an 'excise' or 'privilege' tax upon the business of storing and withdrawing the gasoline and the amount is computed upon withdrawals.'' In *Central Vermont Ry.* v. *Campbell,* 108 Vt. 510 [192 Atl. 197, 199, 111 A. L. R. 175], the Supreme Court of Vermont, in upholding that state's tax upon the ''use, distribution or sale'' of gasoline, declared: ''It is an excise tax upon the domestic sale or use of the gasoline, measured by gallonage.'' Many of the use tax cases are reviewed in this opinion. In *Commonwealth* v. *Dixie Greyhound Lines,* 255 Ky. 111 [72 S. W. (2d) 1032, 1033], the court described the Kentucky gasoline use tax as ''an excise tax on distribution, consumption or use''. It is also worth noting that the United States Supreme Court in *Southern Pac. Co.* v. *Gallagher, supra,* in analyzing the nature of the very tax here challenged, refers to it as one that (p. 391) ''imposes an excise on the consumer . . . for the storage, use or other consumption in the state of such property''. There is an excellent discussion of the problem in *Henneford* v. *Silas Mason Co., supra,*—the case which upheld as an excise tax the use or ''compensating'' tax of the state of Washington, a tax substantially similar to the one here under attack. After holding that the tax was an excise tax, in further discussing the nature of the tax the court stated (p. 582) :

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation when they have become part of the common mass of property within the state of destination. . . . .For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. . . . The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. . . . A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively."

The cases of *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288 [41 Sup. Ct. 272, 65 L. Ed. 638], and *City of Los Angeles* v. *Lankershim,* 160 Cal. 800 [118 Pac. 215], cited and relied upon by appellants are not in point. In the Dawson case the court held that a Kentucky statute imposing a gallonage tax on persons engaged in the business of owning and storing whisky in bonded warehouses, such tax being payable when the whisky was either withdrawn from bond or transferred in bond from Kentucky to a point outside the state, was in fact a property tax upon ownership as such, and was not a license tax. This conclusion was predicated upon the peculiar terms of that statute, and upon the fact that the emergency clause of the statute indicated that the legislature of Kentucky considered that it was taxing the whisky and not a privilege. This case is not contrary to nor inconsistent with the later Supreme Court cases cited, *supra,* holding that use taxes are excise taxes. In the Lankershim case this court expressly refused to determine whether a so-called license tax, payable yearly by persons engaged in "maintaining, managing or conducting a building for the purpose of letting rooms", the tax being measured by the size of the building, was a property or an excise tax.

The appellants' last contention (urged in their closing briefs) is that under the declaration of rights of the California Constitution (art. I, sec. 1.) every person possesses "certain inalienable rights among which are those of . . . acquiring, possessing or protecting property"; that under this section an excise tax upon the privilege of ownership and use may not be levied by the state, although concededly the sec-

tion does not prohibit property taxes. The contention is obviously unsound. As already held, the tax is not upon ownership as such, but upon the privilege of use, storage or consumption. The cited provision no more prohibits a tax on the privilege of use than it does a tax on the property itself.

For the foregoing reasons the judgments appealed from should be and each is hereby affirmed.