## PAN AMERICAN AIRWAYS COMPANY *v.* NORMAN D. GODBOLD, JR., TREASURER TERRITORY OF HAWAII.

### No. 2481.

ARGUED APRIL 22, 1942.     DECIDED JUNE 27, 1942.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY KEMP, C. J.

This is a writ of error to the judgment of the circuit court of the first judicial circuit in favor of Norman D. Godbold, Jr., Treasurer of the Territory of Hawaii (hereinafter called the defendant), in an action by Pan American Airways Company (hereinafter called the plaintiff) to recover moneys paid under protest for taxes claimed to be due from it to the Territory under the Hawaiian Fuel Tax Act. (R. L. H. 1935, c. 64.) The action is authorized by and was brought pursuant to section 571, R. L. H. 1935, to recover taxes admittedly paid by plaintiff under protest.

There are no issues of fact. The sole question is, Do the undisputed facts bring the plaintiff within the taxing provisions of the Hawaiian Fuel Tax Act?

The material facts are that all gasoline upon which the tax was levied and paid was purchased by plaintiff from the Standard Oil Company of California under a contract made by an exchange of letters between the oil company in California and plaintiff's purchasing agent in New York. The contract was entered into January 24, 1935, and by the terms of the contract set forth in the initial correspondence the gasoline required by the plaintiff for its Pacific Ocean air lines was to be delivered to it in 150,000 gallon lots, f.o.b. dock San Pedro or Richmond, California. On April 1, 1936, the contract was renewed, to expire April 1, 1939, and in addition provided that deliveries taken at Honolulu should be two cents per gallon higher than the base price f.o.b. Richmond, California.

On October 1, 1936, the oil company leased to the plaintiff a certain storage tank at Iwilei, Honolulu, for a term to expire March 31, 1939, and modified the existing contract by providing that "Any deliveries of aviation gasoline taken at Honolulu, T. H., shall be f.o.b. dock at a price two cents a gallon higher than base price f.o.b. Richmond, California. Title to all gasoline so delivered shall pass to you upon delivery by us at dock." The oil company further agreed to "handle deliveries of your gasoline purchased from us to said storage from our tank ships and to make delivery by tank truck of said gasoline for you from said storage to your fueling station at Pearl City." Said amendment further provided that "any tax imposed by any governmental authority upon, or measured by, the production, manufacture, storage, transportation, or sale of the gasoline delivered hereunder, shall, unless included in the price payable by you, be added to such price and shall be paid to us in addition thereto."

On June 8, 1938, the contract as amended was extended

to April 1, 1942, and thereafter until terminated by ninety days' written notice from either of the parties, and certain other amendments with which we are not concerned were made.

On February 10, 1939, plaintiff leased from the oil company an additional storage tank at Iwilei, Honolulu, and provisions with reference to deliveries to the plaintiff from the oil company's tank ships and transportation to plaintiff's Pearl City storage tanks were renewed. This amendment further provided that "any tax imposed by. any governmental authority upon or measured by the storage, transportation, withdrawal or sale of the gasoline placed in said storage by us for you shall be paid by you."

On July 26, 1939, the contract as amended was further amended by providing that "effective at once, your Honolulu requirements of Aviation Gasoline will be sold to you in bulk (not packaged) f.o.b. Richmond, California, delivery to be made into our tankers at our Richmond dock for transportation for your account to storage leased by you in Honolulu," and provided for a charge of two cents per gallon to compensate the oil company for transporting the gasoline for the plaintiff from Richmond to the storage in Honolulu.

All gasoline purchased by the plaintiff and brought into the Territory pursuant to said contract was first stored in the Iwilei tanks and from time to time thereafter transferred to plaintiff's air base tanks and as needed metered into the fuel tanks on plaintiff's planes from its air base tanks and consumed in its transoceanic flights out of Honolulu. It is the gasoline thus withdrawn from storage and placed in plaintiff's planes that measured the tax demanded of plaintiff and paid by it under protest.

The Hawaiian Fuel Tax Act requires every distributor of "liquid fuel" to pay a license tax to the Treasurer of the Territory at a stated rate per gallon for all such fuel

"refined, manufactured, produced or compounded by such distributor and sold or used by him in the Territory, or imported by such distributor, or acquired by him from persons not licensed distributors, and sold or used by him in the Territory." (§ 2013.)

The term "distributor" is defined as every person who "refines, manufactures, produces or compounds liquid fuel in the Territory, and sells or uses the same therein; also every person who imports or causes to be imported into the Territory any liquid fuel * * * for his own use in the Territory; also every person who acquires liquid fuel from a person not a licensed distributor and sells or uses the same." (§ 2010.)

The plaintiff argues that the recited facts do not show a "use" of the gasoline "in the Territory," whereas the defendant argues that the fueling of plaintiff's planes in the Territory in the manner aforesaid constitutes a "use" of the gasoline "in the Territory."

Before the tax can be applied to the plaintiff, it is necessary to show that the manner in which plaintiff acquired and disposed of the gasoline brought into the Territory for its use brings it within the statutory definition of a distributor. The plaintiff does not refine, manufacture, produce, compound, sell or import for sale any gasoline or other liquid fuel. If plaintiff is to be brought within the definition of a "distributor," it must be because it imports or causes to be imported into the Territory gasoline for its own use "in the Territory." That it imports or causes to be imported gasoline into the Territory for its own use cannot be questioned. The sole question then is, Was the "use" for which the gasoline was imported and to which it was put by the plaintiff a "use" thereof "in the Territory"? If it was, then plaintiff's activities brought it within the statutory definition of a distributor who imported gasoline for its own use in the Territory

and its action must fail. On the other hand, if the gasoline was not "used in the Territory," no tax was due and plaintiff should prevail.

The statutory definition of "use" wherever used in the Hawaiian Fuel Tax Act is as follows: " 'Use' either as a noun or verb, and derivative expressions, shall mean and include distribution or other disposition of fuel, or any other use thereof, whether with or without compensation therefor."

Other provisions of the Hawaiian Fuel Tax Act have been relied upon by counsel in support of their interpretation of the word "use." We shall briefly outline those provisions.

Section 2015 requires each distributor to keep records showing the total number of gallons of fuel "imported by such distributor * * * and sold or used by him in each county during each month; the total number of gallons of such fuel sold to the United States or any department or agency thereof * * * or used in any manner, in each county during each month, the effect of which sale or use is to exempt the fuel so sold or used from the imposition of the tax * * * ."

Section 2016 requires each distributor to file with the Treasurer monthly statements showing, among other things, "the total number of gallons of fuel imported by him and sold or used within each county by him during such month." This section also provides that the tax "shall not apply to any fuel exempted and so long as the same is exempted from the imposition of the tax by the Constitution or laws of the United States; and that the tax shall be paid only once upon the same fuel."

Section 2019 provides as follows: "Tax not applicable to fuel beyond taxing power of Territory. The provisions of this chapter requiring the payment of license fees shall not be held or construed to apply to fuel imported into

the Territory in interstate or foreign commerce while and so long as such fuel is beyond the taxing power of the Territory, nor to any such fuel exported or sold to the government of the United States or any department thereof for official use of the government; but every distributor shall be required to report such imports, exports and sales as provided by this chapter and in such detail as the treasurer shall require."

Section 2021 requires the Territorial Treasurer to set up a fund for each of the several counties in which the tax collected on fuel sold or used in each county is deposited. As of May, 1937 (Session Laws 1937, Ser. A-45, Act 172), this section was amended by creating another fund to be known as "Territorial Airport Fund," in which the tax collected upon gasoline "sold for use and used in airplanes" is deposited. Also, this 1937 amendment adjusted the departmental mechanics of the Act to other tax laws affecting the counties of the Territory.

The taxes paid by plaintiff and here sought to be recovered were measured by the number of gallons of fuel metered into the fuel tanks on plaintiff's planes from its storage tanks at its air base at Pearl City on the island of Oahu, Territory of Hawaii. Said fuel has not been taxed upon any other stage of handling, storage or transfer from one storage to another in the Territory. There is no contention that the provisions of section 2016 to the effect that "the tax shall be paid only once upon the same fuel" has been violated.

The burden of plaintiff's argument is that the gasoline metered into plaintiff's planes was not "used" until it was consumed by combustion in plaintiff's planes, and since it was consumed in transoceanic flights from the air base at Pearl City, it was not "used in the Territory," and therefore not subject to the tax. Plaintiff, in support of its contention that the word "use" in the statute means "con-

sumption," refers to various phrases appearing in the statute, such as "used within each county," "for official use of the United States," "sold in one county for use in another," and "sold for use and used in airplanes." The statute defines liquid fuel as "liquids ordinarily, practically and commercially usable in internal combustion engines for the generation of power * * * ." It is urged that these phrases are tags designating, describing or limiting liquid fuel in order to govern its taxability or to determine the disposition of tax money collected, and that in each of said phrases the word "use" is used to mean "consumption" either as a fuel, an explosive, a solvent or a chemical by which it is either destroyed or its physical condition is changed.

The plaintiff makes no reference to the statutory definition of the word "use." The argument is that in the popular, usual sense, as used by intelligent people, the transfer of gasoline from storage to the fuel tanks of a plane has never been considered a "use" of gasoline; that in the popular, usual, correct and clear sense of the word, the "use" happens when gasoline is burned in the plane. In support of the proposition that the popular and usual meaning of the words "use" and "used," as contended for by plaintiff, should be applied in this case, plaintiff cites our statute which provides that, "The words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." R. L. H. 1935, § 10.

Both reason and authority support the proposition that when words used in an Act are defined in the Act, the express declaration of the meaning of the words must govern unless there is sufficient in the Act elsewhere to show that the words are used in another sense. (*Assessor v. C. Brewer & Co.*, 15 Haw. 29, 34; *Haw'n Trust Co.* v.

*Borthwick,* 34 Haw. 493; *Fox* v. *Standard Oil Co.,* 294
U. S. 87, 95.) The statutory definition of words used in
the Act in question, read in the light of all the provisions
of the Act, must therefore be applied, notwithstanding the
provisions of section 10 of our statute, even though the
statutory definition so read may ascribe to the defined
words a meaning different from their general or popular
use or meaning. By the statutory definition, "use," either
as a noun or verb, and derivative expressions, shall mean
and include "distribution or other disposition of fuel, or
any other use thereof, whether with or without compen-
sation therefor."

The circuit judge found in the provisions of the Act,
especially the definition of "use" and the express language
of section 2019, evidence of a general intent on the part
of the legislature to levy an excise tax reaching to every
"distribution or other disposition of fuel, or any other
use thereof," which is not by virtue of the commerce clause
of the United States Constitution or other Federal law
removed from the reach of the power of the Territory to
tax. We think he was justified in that conclusion. Hav-
ing so found the legislative intent, the circuit judge first
examined the question of whether or not the fuel in ques-
tion had, under the admitted facts, ceased to be a subject
of transportation in interstate commerce and to have
thereby lost its immunity as such from state taxation. On
the authority of *Nashville C. & St. L. Ry.* v. *Wallace,* 288
U. S. 249, and cases therein cited, the conclusion was
reached that the fuel in question had, upon being unloaded
and stored, lost its immunity from state taxation. The
fact of lost immunity was considered in construing the
Act.

The plaintiff sought no relief on the ground that the
tax is a prohibited burden on interstate commerce and
therefore criticizes the drawing of any inferences from

the cases in which the sole issue was the constitutionality of the state Act questioned. Where, however, the Act as a whole evidences a legislative intent to tax every distribution or other disposition or use of the liquid fuel imported into the Territory permitted by the Constitution and laws of the United States, as the circuit judge concluded it did, then the question of whether the levy of the tax upon the happening of the event which the defendant claims subjected plaintiff to the tax, *viz.,* the withdrawal of gasoline from storage and using it for filling the fuel tanks on its planes used exclusively in interstate and foreign commerce, imposed an unconstitutional burden on interstate commerce, was a legitimate subject of inquiry in an effort to arrive at the legislative intent, even though the constitutionality of the Act is not questioned.

*Edelman* v. *Boeing Air Transp.,* 289 U. S. 249, involved a Wyoming statute providing for a "license tax of four cents per gallon * * * on all gasoline used or sold in this State * * * for domestic consumption" and in addition provided that "every person * * * who shall use any gasoline in this State upon which the said tax has not been paid by any wholesaler in this State," shall pay a like tax. Boeing Air Transport, Inc., operating airplanes in interstate commerce, brought suit in the United States District Court of Wyoming against Wyoming tax officials to enjoin the collection of the tax upon gasoline purchased and disposed of, as hereinafter related, as a violation of the commerce clause of the Constitution. The district judge upheld the tax. (51 F. [2d] 130.) On appeal the court of appeals reversed the decree in part and directed that the tax officials be enjoined from assessing the tax on gasoline procured by "purchases completed outside the State of Wyoming and then brought into that state and used in its planes in interstate commerce." (61 F. [2d] 319.) On appeal to the Supreme Court of the United

States, Mr. Justice Stone (now Chief Justice), speaking for the court said: "The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. No tax is collected for gasoline consumed in respondent's planes either on coming into the State or on going out. It is at the time of withdrawal alone that 'use' is measured for the purpose of the tax. The stored gasoline is deemed to be 'used' within the State and therefore subject to the tax, when it is withdrawn from the tanks. * * * A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce." No reference was made by any of the three courts in which the foregoing case was considered to a statutory definition of the word "use" or to a construction of the Act by any state court. Apparently, there was no statutory definition of "use" or any judicial construction of the Act except by the Federal courts. Our statutory definition of "use" clearly extends its meaning beyond its general or popular use or meaning. When the legislature said that "use" shall "mean and include distribution or other disposition of fuel, or any other use thereof, whether with or without compensation therefor," it used apt words to insure that such disposition as plaintiff made of the gasoline in question would come within taxing provisions of the Act. No other provision of the Act conflicts with that intention.

*Central Vt. Ry., Inc.* v. *Campbell,* 108 Vt. 510, 192 Atl. 197, contains an outstanding treatment of a statute in substance the same as ours. In that case the trains operated by plaintiff railway company in interstate commerce used gasoline for fuel which it purchased outside the State of Vermont and imported it to storage places within the

State where it was kept to await its use as fuel in interstate traffic. Said gasoline was used exclusively for fueling plaintiff's interstate trains. Two questions were presented, both of which were disposed of adversely to the plaintiff. The first question considered was whether the imposition of the tax was an unconstitutional interference with interstate commerce. After disposing of that question adversely to the plaintiff on the authority of *Edelman* v. *Boeing Air Transport, supra*; *Nashville, C. & St. L. Ry.* v. *Wallace*, 288 U. S. 249; *Eastern Air Transport, Inc.* v. *South Carolina Tax Comm.*, 285 U. S. 147; *American Airways, Inc.* v. *Wallace*, 57 F. (2d) 877 [*aff'd* 287 U. S. 565], and *American Airways, Inc.* v. *Grosjean*, 3 F. Supp. 995 [*aff'd* 290 U. S. 596], the court stated the remaining question to be "whether the withdrawal of certain quantities of this gasoline from the storage tanks, for the purpose of filling the receptacles in the motor cars of the plaintiff, is a 'use' of it within the meaning of the statute."

The Vermont statute did not define "use" or "used." On the question presented the court said: "There remains to consider the question whether the word, 'used,' in P. L. 1228, includes the process of withdrawal from storage. The meaning to be given to the word is important, for if it denotes simply the consumption of gasoline, the tax is clearly invalid when applied to fuel consumed in interstate transportation, for then the gasoline is being actively employed as an instrumentality of interstate commerce, and being carried therein, and, following the authority of the Helson and Bingaman cases, a direct burden is placed thereon. But if the 'use' is taken to mean the withdrawal from storage, then, as we have seen, it is a purely domestic transaction which is completed before any interstate operation begins; and in such case, although the purpose of the withdrawal is thereafter to furnish motive power to propel an interstate train, and it is actually so employed, it

constitutes only an indirect burden on interstate commerce which is not prohibited by any constitutional provision.

"When a statute is susceptible of two constructions, one of which supports it and gives it effect, and the other renders it unconstitutional and void, the former is to be adopted, even though the latter may be the more natural interpretation of the language used, for an act is never to be construed as unconstitutional if a reasonable construction can be placed upon it which will render it valid. *State* v. *Clement Nat. Bank,* 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22. * * *

"As we have seen, it is said in the Edelman case that 'A state may validly tax the "use" to which gasoline is put in withdrawing it from storage within the state * * *,' and this language is quoted and approved in *American Airways, Inc.* v. *Grosjean, supra,* and *Commonwealth* v. *Dixie Greyhound Lines, Inc., supra.* The statute in the Edelman case imposed the tax 'on all gasoline used or sold in this state * * * for domestic consumption' (Laws Wyo. 1929, Ch. 139, § 1), and this is, in legal effect, the same as P. L. 1228, providing for the payment of a tax upon 'each gallon of such motor fuel sold by the distributor,' and also 'upon each gallon of such motor fuel used within the state by him.' In the Grosjean case the tax was imposed upon all gasoline 'sold, used or consumed within the State of Louisiana for domestic consumption.' Here, again, so far as the words, 'sold' and 'used,' are concerned, the statute is substantially the same as P. L. 1228. The same is true of the statute in *Commonwealth* v. *Dixie Greyhound Lines, Inc., supra.* In *Nashville, C. & St. L. R. Co.* v. *Wallace,* and *American Airways, Inc.* v. *Wallace,* in which the same statute was in issue, the tax was laid upon the business of storing or distributing gasoline or allowing the same to be withdrawn from storage whether for sale or other use. This act differs in its language from those heretofore no-

ticed, but is the same in effect, for the Court, in the Edelman case, in speaking of the tax therein under consideration, said, 'Such a tax cannot be distinguished from that considered and upheld in * * * *Nashville, C. & St. L. R. Co.* v. *Wallace*' (p. 1157, L. ed.).

"We hold that when gasoline is withdrawn from storage, under the circumstances shown in this cause, it is 'used' within the meaning of P. L. 1228. Indeed, it would appear that the only feasible time for measuring the amount of gasoline used, for the purpose of ascertaining the tax thereon, is when it is withdrawn, where the distributor has not elected to pay the tax upon the gross quantity of the motor fuel purchased or imported, etc., by him, less tare of 1 per cent in the manner provided by P. L. 1229. The plaintiff argues that the opinion in the Edelman case does not construe the word, 'use,' to include storage. This may be so, but here the process sought to be taxed is not the storage but the withdrawal from storage."

While our Act differs slightly in its language from the Acts construed in the cases herein noticed, they are all essentially the same. In addition, our Act defines the word "use," giving it a broader meaning than its general or popular use or meaning. The definition of "use" is additional evidence of the legislative intent to bring withdrawal from storage of fuel imported into the Territory and there stored to await its ultimate disposition, within the purview of the Act.

We conclude that the circuit court did not err in holding plaintiff liable for the tax. The judgment should therefore be affirmed, and it is so ordered.

*J. G. Anthony* (Robertson, Castle & Anthony on the briefs) for plaintiff in error.

*R. V. Lewis,* Deputy Attorney General (J. V. Hodgson, Attorney General, with her on the brief), for defendant in error.